**CASE NO.: 8:15-CV-00614-CEH**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
_____

TARGET NATIONAL BANK, Appellant,

v.

ANGELA WELCH, as Chapter 7 Trustee, Appellee.

_____

On Appeal from the United States Bankruptcy Court
for the Middle District of Florida Tampa Division
Bankruptcy Case No. 8:10-bk-20178-CPM
Adversary Proceeding Case No. 8:12-ap-145-CPM

_____

**ANSWER AND RESPONSE BRIEF OF APPELLEE ANGELA WELCH,**
**CHAPTER 7 TRUSEE ON BEHALF OF THE WARD ESTATE**
_____

Thomas A. Lash
John W. Wilcox
Kenneth C. Grace
**LASH WILCOX & GRACE PL**
4950 W. Kennedy Blvd.; Ste. 320
Tampa, FL 33609
Telephone: 813.289.3200
Facsimile: 813.289.3250

*Counsel for Appellee*
*Angela Welch as Chapter 7 Trustee*
*of the Ward Estate*

# TABLE OF CONTENTS

CERT. OF INT. PERSONS AND CORP. DISCL. STATEMENT…………....…..ii

TABLE OF AUTHORITIES……………………………………………..iii-xi

STATEMENT OF THE ISSUES……………………………………………1

STATEMENT OF JURISDICTION…………………………………………2

STANDARD OF REVIEW…………………………………………...2-4

STATEMENT OF THE CASE…………………………………………4-12

SUMMARY OF THE ARGUMENT…………………………………12-14

ARGUMENT…………………………………………………………14-46

      BANKRUTPCY COURT'S FINDINGS SHOULD
      NOT BE DISTURBED…………………………………………14-17

      TARGET VIOLATED THE FCCPA………………………..17-24

      TARGET VIOLATED THE TCPA…………………………24-46

CONCLUSION…………………………………………………..47

STATEMENT REGARDING ORAL ARGUMENT……………………48

CERTIFICATE OF COMPLAINCE………………………………48

CERTIFICATE OF SERVICE…………………………………….…48

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellee certifies that the following have an interest in the outcome of this appeal:

Ernest A. Ward (Chapter 7 Debtor);

Donna L. Ward (Chapter 7 Debtor);

Angela Welch, Trustee (Appellant/Plaintiff);

Lash Wilcox & Grace PL (counsel for Appellee);

Thomas A. Lash (counsel for Appellee);

John W. Wilcox (counsel for Appellee);

Kenneth C. Grace (counsel for Appellee);

Target National Bank (Appellant/Defendant);

Dykema Gossett PLLC (counsel for Appellant);

Brian Melendez (counsel for Appellant);

Hill Ward Henderson, P.A. (counsel for Appellant);

Sherilee J. Samuel (counsel for Appellant);

R. Travis Santos (counsel for Appellant);

Hon. Catherine McEwen (U.S. Bankruptcy Court Judge).

/s/_____
Kenneth C. Grace

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Abercrombie v. Wells Fargo Bank, N.A.*
    417 F.Supp.2d 1006 (N.D. Ill. 2006)…………………………………………39

*Adamcik v. Credit Control Services, Inc*.,
    832 F.Supp.2d 744 (W.D. Tex. 2011) …………………………………...35, 38

*Amlong & Amlong, P.A.* v. *Denny's, Inc*.,
    457 F.3d 1180 (11th Cir. 2006)………………………………………………42

*Anderson v. City of Bessemer City, N.C*.,
    470 U.S. 564 (1985)………………………………………………………15, 17

*Barnes v. Seterus, Inc*.,
    2013 WL 6834720 (S.D. Fla. 2013)………………………………………24

*Bassett v. I.C. System, Inc*.,
    715 F.Supp.2d 803 (N.D. Ill. 2010)………………………………………20

*Beal v. Wyndham Resorts, Inc*.,
    956 F.Supp.2d 962 (W.D. Wisc. 2013)……………………………….35, 38

*Boston and Maine Corp. v. Moore*,
    776 F.2d 2, (1st Cir. 1985)……………………………………………………3

*Breslow v. Wells Fargo*,
    755 F.3d 1265 (11th Cir. 2014)…………………………………...25, 26

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945)………………………………………………….39

*Buchholz v. Valarity, LLC*,
    2014 WL 5849434 (E.D. Mo. 2014)………………………………………38

*Buslepp v. B & B Entertainment, LLC*,
    2012 WL 4761509 (S.D. Fla. 2012)………………………………………27

*Catlin v. U.S.*,
324 U.S. 229 (1945)…………………………………………………………2

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993)………………………………………………20

*Coniglio v. Bank of Am., N.A.*,
2014 WL 5366248 (M.D. Fla. 2014)………………………………………37

*Corp. Assets, Inc. v. Paloian*,
368 F.3d 761 (7th Cir. 2004)…………………………………………………..3

*Darvill v. Lyons*,
2013 WL 237795 (S.D. Fla. 2013)…………………………………………27

*Derricotte v. Pressler & Pressler, LLP*,
2011 WL 2971540 (D. N.J. 2011)…………………………………………24

*F.C.C. v. Pacifica Foundation*,
438 U.S. 726, 748 (1978)………………………………………………..35

*Ferguson v. Credit Mgmt. Control, Inc.*,
140 F.Supp.2d 1293 (M.D. Fla. 2001)………………………………….…18

*Fontenot v. Upjohn Co.*,
780 F.2d 1190 (5th Cir. 1986)…………………………………………..27

*Foti v. NCO Fin. Sys., Inc.*,
424 F.Supp.2d 643 (S.D. N.Y. 2006)……………………………………...20

*Frisby v. Schultz*,
487 U.S. 474 (1988)……………………………………………………36

*Gager v. Dell Fin. Svcs., LLC*,
727 F.3d 265 (3d Cir. 2013)……………………………31, 32, 34, 35, 37, 38

*Gutierrez v. Barclays Group*,
2011 WL 579238 (S.D. Cal. 2011)……………………………………...……38

*Harris v. Beneficial Fin. Co. of Jacksonville,*
    338 So. 2d 196 (Fla. 1976)……………………………………………..17

*Hendricks v CBE Group, Inc.,*
    891 F.Supp.2d 892 (N.D. Ill. 2012)…………………………….………20

*Hitchman v. Nat'l Enter. Sys., Inc.,*
    2014 WL 912363 (S.D. Fla. 2014)……………………………..………38

*Holmes v. Back Doctors, Ltd.,*
    695 F.Supp.2d 843 (S.D. Ill. 2010)…………………………….…………34

*Holton v. City of Thomasville Sch. Dist.,*
    425 F.3d 1325 (11th Cir. 2005)……………………………………….3, 14

*Howard Johnson Co., Inc. v. Khimani,*
    892 F.2d 1512 (11th Cir. 1990)……………………………………………19

*In re Accutane Products Liability Litigation,*
    2007 WL 1099049 (M.D. Fla. 2007)………………………………………42

*In re Caldwell,*
    851 F.2d 852 (6th Cir. 1988)……………………………….………………4

*In re Celotex Corp.,*
    227 F.3d 1336 (11th Cir. 2000)…………………………….………………3

*In re Donovan,*
    532 F.3d 1134 (11th Cir. 2008)………………………………………….2

*In re Edward M. Johnson and Assoc.,*
    845 F.2d 1395 (6th Cir. 1988)………………………….…………………15

*In re F.D.R. Hickory House, Inc.,*
    60 F.3d 724 (11th Cir. 1995)……………………….………………………2

*In re KMart Corp.,*
    381 F.3d 709 (7th Cir. 2004)……………………….………………………3

*In re Marrs–Winn*,
    103 F.3d 584 (7th Cir. 1996)……………….…………………………3

*In re Martin*,
    817 F.2d 175 (1st Cir. 1987)………………….…………………………3

*In re Neis*,
    723 F.2d 584 (7th Cir. 1983)……………………………………………15

*In re Pedro Abich Inc*.,
    165 B.R. 5 (D. Puerto Rico 1994)………………..………………………3

*In re TCL Investors*,
    775 F.2d 1516 (11th Cir. 1985)………………….……………………..2

*In re Walker*,
    726 F.2d 452 (8th Cir. 1984)………………….…………………………15

*Jeter v. Credit Bureau, Inc.,*
    760 F.2d 1168 (11th Cir. 1985)…………………………………...18, 23

*Jove Engineering, Inc. v. I.R.S.*,
    92 F.3d 1539 (11th Cir. 1996)……………...…………………………19

*Kerwin v. Remittance Assistance Corp*.,
    559 F.Supp.2d 1117 (D. Nev. 2008)…………….………………………20

*Laughlin v. Household Bank, Ltd*.,
    969 So.2d 509 (Fla. 1st DCA 2007)………………….…………………18

*Leblanc v. Unifund CCR Partners*,
    601 F.3d 1185 (11th Cir. 2010)………….………………………..17, 18

*Liu v. Price Waterhouse LLP*,
    302 F.3d 749 (7th Cir. 2002)……………….…………………………4

*Lough v. Brunswick, Corp*.,
    103 F.3d 1517 (Fed. Cir. 1997)………….……………………………16

*Mammen v. Bronson & Migliaccio, LLP*,
    715 F.Supp.2d 1210 (M.D. Fla. 2009)…………………………………18

*McDowell v. John Deere Indus. Equip. Co*.,
    461 F.2d 48 (6th Cir. 1972)……………………………………………14

*Mey v. Monitronics Intern, Inc*.,
    959 F.Supp.2d 927 (N.D. W.Va. 2013)…………………………………..34

*Meyer v. Portfolio Recovery Assocs. LLC,*
    707 F.3d 1036 (9th Cir. 2012)……………………………………………26

*Mims v. Arrow Fin. Servs., LLC,*
    132 S.Ct. 740 (2012)……………………………………………….25, 26, 34

*Mitchell v. U.S.*,
    141 F.3d 8 (1st Cir. 1998)………………………………………………15

*Mobil Oil Corp. v. Bransford,*
    648 So.2d 119 (Fla. 1995)………………………………………………28

*Moore v. Firstsource Advantage, LLC,*
    2011 WL 4345703 (W.D. N.Y. 2011)……………………………...…20

*Morris v. Ocwen Loan Servicing, LLC,*
    2015 WL 5072011 (S.D. Fla. 2015)………………………………………38

*Murphy v. DCI Biologicals Orlando, LLC,*
    2013 WL 6865772 (M.D. Fla. 2013)……………………………………27

*Ortega v. Collectors Training Institute of Ill., Inc*.,
    2011 WL 241948 (S.D. Fla. 2011)………………………………………23

*Ortiz v. Accounts Receivable Mgmt., Inc*.,
    2010 WL 547910 (S.D. Fla. 2010)…………………………………...…23

*Osorio v. State Farm Bank, F.S.B*.,
    746 F.3d 1242 (11th Cir. 2014)…………….25, 26, 27, 28, 29, 31, 34, 37, 38

*Owen Indus., Inc. v. Taylor,*
354 So.2d 1259 (Fla. 2d DCA 1978)………………………………………29

*Palmacci v. Umpierrez,*
121 F.3d 781 (1st Cir. 1997)……………………………………………15

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,*
781 F.3d 1245 (11th Cir. 2015)………………….……………………35

*Parker v. DeKalb Chrysler Plymouth,*
673 F.2d 1178 (11th Cir. 1982)……………………………………………39

*Pratt v. CMRE Fin. Svcs., Inc.,*
2012 WL 86957 (E.D. Mo. 2012)………………………………………20

*Reardon v. Uber Techs., Inc.,*
2015 WL 4451209 (N.D. Cal. 2015)………………………………………38

*Regan v. Law Offices of Edwin A. Abrahamsen & Assoc., P.C.,*
2009 WL 4396299 (E.D. Pa. 2009)………………….……………………24

*Reynolds v. Int'l Business Machines Corp.,*
320 F.Supp.2d 1290 (M.D. Fla. 2004),
aff'd, 125 Fed. Appx. 982 (11th Cir. 2004)……………….………………..42

*Scarborough v. Atlantic Coast Line R. Co.,*
178 F.2d 253 (4th Cir. 1950)……………………………….………………35

*Scott v. Fla. Health Sciences Ctr., Inc.,*
2008 WL 4613083 (M.D. Fla. 2008)………………………………………24

*Slodov v. U.S.,*
552 F.2d 159 (6th Cir. 1977)……………………………………………14

*Smith v. Am. Auto. Ins. Co.,*
498 So.2d 448 (Fla. 3d DCA 1986)……………………………………..28

*Smith v. Markone Fin., LLC,*
2015 WL 419005 (M.D. Fla. 2015)………………….……………..…37

*Soppet v. Enhanced Recovery Co., LLC*,
  679 F.3d 637 (7th Cir. 2012)…………………………………………………27

*Story v. J.M. Fields, Inc.*,
  343 So.2d 675 (Fla. 1st DCA 1977)……………….…………………………23

*Swope v. Credit Mgmt., LP*,
  2013 WL 607830 (E.D. Mo. 2013)…………………………………………..26

*Taco Bell of Cal. v. Zappone*,
  324 So.2d 121 (Fla. 2d DCA 1975)……………..…………………………29

*Thomkin Corp. v. Miller*,
  24 So.2d 48 (Fla. 1945)…………………………………………………………28

*Thornburg v. Gingles*,
  478 U.S. 30 (1986)…………………….…………………………………………3

*U.S. v. Cardona-Rivera*,
  904 F.2d 1149 (7th Cir. 1990)……………….………………………………16

*Vance v. Bureau of Coll. Recov., LLC*,
  2011 WL 881550 (N.D. Ill. 2011)………….…………………………………26

*Viehman v. Schweike*r,
  679 F.2d 223 (11th Cir. 1982)……………….………………………………16

*Wainwright v. Sykes*,
  433 U.S. 72 (1977)……………………………………………………………17

*Walker v. Transworld Sys., Inc.*,
  2014 WL 7225212 (M.D. Fla. 2014)……………………………………………37

*Wegner v. Grunewaldt*,
  821 F.2d 1317 (8th Cir. 1987)……………………………………………..15

*Welch (Ward) v. Target*,
  No. 8:10-bk-20178, No 8:12-ap-00145 (Bank. M.D. Fla. 2014)……………8

*Williams v. Poulos*,
    11 F.3d 271 (1st Cir. 1993)…………………………………………….…15

*Zhou v. Guardian Life Ins. Co. of Am.*,
    295 F.3d 677 (7th Cir. 2002)……………………………………………….4

<u>Statutes</u>                                         <u>Page(s)</u>

11 U.S.C. § 105……………………………………………………......19

15 U.S.C. § 1692 *et. seq*………………………………………………19, 20

28 U.S.C. § 158(a)……………………………………………………….2

47 U.S.C. § 227 *et. seq*………………………………………………25

47 U.S.C. § 227(a)(1)(A)……………………………………………..……….5

47 U.S.C. § 227(b)……………………………………………….4, 11, 34

47 U.S.C. § 227(b)(1)………………………………………………….…..…5

47 U.S.C. § 227(b)(1)(A)(iii)…………………………………………………..25

Fla. Stat. §559.55 *et. seq*………………………………………………4, 19, 20

Fla. Stat. § 559.55(2)………………………………………………....5

Fla. Stat. § 559.55(3)…………………………………………………5

Fla. Stat. § 559.55(5)……………………………………...............5

Fla. Stat. § 559.552………………………………………………18, 20

Fla. Stat. § 559.72………………………………………………………5

Fla. Stat. § 559.72(7)……………………………………...…11, 18, 19, 20, 24

Fla. Stat. § 559.77…………………………………………………………18

x

Rules                                                                Page(s)

Fed. R. Bankr. P. 8013……………………………………………… ……2, 3, 4

Misc/Other                                                           Page(s)

10A FLA. JUR.2D DEBTOR § 138 (2010)………………………………………17

137 Cong. Rec. 30,821 (1991)…………………………………………….………25

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 300 F.C.C.R. 7961 (2015)……………….…….………35

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559 (2008)…………………………....26

*Merriam-Webster's Collegiate Dictionary* 918 (11th ed. 2003)……..……………27

S. Rep. 102–178, at 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972; 27 FCC Rcd. at 15391–92 ¶ 2…………………………………….…………..34

## STATEMENT OF THE ISSUES

I.     Whether the Bankruptcy Court's credibility determinations, weighing of the evidence, factual findings, and application of the law to the facts should be overturned or disturbed as an abuse of discretion or clear error of judgment.

II.     Whether repeated calls to a consumer and her spouse (as many as six calls a day) following notice of inability to pay, refusal to pay, and requests for calls to stop can constitute: (a) willful communications with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, and/or (b) other willful conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

III.     Whether under binding Eleventh Circuit case law regarding the TCPA, Target failed to establish the affirmative defense of express consent where the called party did not consent to receive calls on his wireless phone and where consent was also revoked.

IV.     Whether the Bankruptcy Court, after making credibility determinations and weighing the evidence made a finding regarding: the date of revocation, subsequent call count, and calculation of TCPA damages, and if the findings should be overturned or disturbed as an abuse of discretion or clear error of judgment.

## STATEMENT OF JURISDICTION

"Although a district court, at its discretion, may review interlocutory judgments and orders of a bankruptcy court, *see* 28 U.S.C. § 158(a), a court of appeals has jurisdiction over only final judgments and orders entered by a district court or a bankruptcy appellate panel sitting in review of a bankruptcy court, *see* § 158(d)." *In re F.D.R. Hickory House, Inc.*, 60 F.3d 724, 725 (11th Cir.1995); *see also In re Donovan*, 532 F.3d 1134, 1136 (11th Cir. 2008); *In re TCL Investors*, 775 F.2d 1516, 1519 (11th Cir. 1985). A final judgment or order is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945); *see also In re TCL Investors*, 775 F.2d at 1519. To be final, a bankruptcy court order must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Donovan*, 532 F.3d at 1136–37. This Court has jurisdiction over the bankruptcy final judgment and order at issue (Doc. 9-2) because it is a final order that completely resolved all of the substantive issues in the case.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. Fed. R. Bankr. P. 8013. While legal conclusions are reviewed de novo,

findings of fact are upheld unless clearly erroneous. *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir.2005); *Thornburg v. Gingles*, 478 U.S. 30, 79 (1986); *see also In re Marrs–Winn*, 103 F.3d 584, 589 (7th Cir. 1996). A bankruptcy judge abuses her discretion only if she commits an error of law or relies on factual findings that are clearly erroneous. *In re Celotex Corp.,* 227 F.3d 1336, 1338 (11th Cir. 2000). Importantly, in reviewing for abuse of discretion, the district court can only reverse where a bankruptcy court's "decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004); *see also Corp. Assets*, *Inc*. *v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004).

Bankruptcy judges have wide discretion when dealing with fact-intensive matters, and district courts hearing bankruptcy appeals must give considerable deference to a bankruptcy judge's factual determinations and discretionary judgments. *In re Pedro Abich Inc*., 165 B.R. 5, 7 (D. Puerto Rico 1994), citing *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987); *Boston and Maine Corp. v. Moore*, 776 F.2d 2, 6 (1st Cir. 1985).

In a bankruptcy proceeding, the bankruptcy court is the finder of fact. Although Bankruptcy Rule 8013 provides that "[o]n an appeal the district court or the bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's

judgment, order, or decree or remand with instructions for further proceedings," the rule also mandates that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988) quoting Bankruptcy Rule 8013. The advisory committee's note to Rule 8013 states that the rule "conforms the appellate review standard to Rule 52 Fed. R. Civ. P. ..." Advisory Committee note to 1987 amendment of Bankruptcy Rule 8013.

The standard is not whether the district court agrees with the bankruptcy court's decision but rather it is <u>whether the bankruptcy court's decision is within the range of options from which a reasonable trial judge could select</u>. *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 754 (7th Cir. 2002) (emphasis added). Challengers of bankruptcy court findings and conclusions face an uphill battle. *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002).

## <u>STATEMENT OF THE CASE</u>

The Bankruptcy Court found that Target violated two consumer protection statutes (Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §559.55, *et. seq.* and Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)) when it engaged in harassing collection activity on the Ward account. The Bankruptcy Court made its findings after a trial having heard sworn witness

testimony, having reviewed 26 documents admitted into evidence, and having reviewed pre and post trial briefs. The Bankruptcy Court entered a Final Judgment and Order against Target. Despite the fact that the Bankruptcy Court's findings are based on sufficient evidence and must be accepted as true, Target appealed.

## A. Statement of Facts-Admitted by Target and Not Disputed

1.      Appellant, Target National Bank, did business in the State of Florida, was a "creditor" as that term is defined by Fla. Stat. § 559.55(3), and is a "person" as provided by 47 U.S.C. § 227(b)(1) and under Fla. Stat. § 559.72. Doc. 20-27, p. 3; Doc. 20-28, p. 4.

2.      Debtors, Ernest and Donna Ward, were natural persons residents of Plant City, Florida in Hillsborough County, and are "consumers," as that term is defined by Fla. Stat. § 559.55(2). Doc. 20-27, p. 2; Doc. 20-28, p. 3-4.

3.      A telephone call or attempted telephone call to a Debtor attempting to collect a consumer debt is a "communication," as defined at Fla. Stat. § 559.55(5). Doc. 20-1, p. 2; Doc. 20-27, p. 5; Doc. 20-28, p. 8.

4.      Appellant, in the conduct of its business, used an automatic telephone dialing system as defined by 47 U.S.C. § 227(a)(1)(A), to communicate with Debtors. Doc. 20-1, pp. 8-10; Doc. 20-27, p. 8; Doc. 20-28, p. 13.

5.      Appellant owned the Alleged Debt from June 1, 2010 through August 22, 2010. Doc. 20-1, p. 4.

6.   According to Appellant's records, Donna Ward opened a Target credit-card account on February 16, 2008, with an account number ending in 492. Appellant's records also reflect that Donna Ward opened another Target credit-card account on September 9, 2008, with an account number ending in 138. Doc. 20-24, p. 2.

7.   According to Appellant's records, Ernest Ward was never a party to Donna Ward's accounts. Doc. 20-24, p. 2.

8.   The Alleged Debt that Donna Ward owed to Appellant was a consumer debt, insofar as it was used for personal, family, or household purposes. The Alleged Debt was listed on her bankruptcy schedules. Doc. 20-22, p. 2; & Doc. 9-9, p. 22.

9.   Donna Ward's cellular telephone number ended in 1033. Doc. 20-22.

10.  Ernest Ward's cellular telephone number ended in 1034. Doc. 20-23.

11.  Target made collection calls to the Debtors' home landline phone, which was telephone number ending in 9181. Doc. 9-9, p. 21.

12.  Target also made calls to Ernest Ward's cell phone ending in 1034. Doc. 9-9, pp. 23 & 58.

13.  Ernest Ward had no account with Target, never provided his phone number to Target or otherwise consented to be called on his wireless phone number. Doc. 9-9, pp. 21-22, 49-50, & 58.

**B. Statement of Facts-Disputed by Target But Established at Trial**

14.     When Target called Donna Ward, Donna Ward told Target to stop calling her.  Doc. 9-9, p. 48, ln. 20-23; p. 49, ln. 1-7; p. 53, ln. 8-25; p. 67; ln. 14-19; Doc. 20-20, pp. 70-73, 84, 89-91, 95-96; Doc. 20-22.

15.     When Target called Donna Ward, Donna Ward also told Target to stop calling her husband.  Doc. 9-9, p. 49, ln. 16-25; p. 50, ln. 1-4; p. 53, ln. 8-25.

16.     When Target called Ernest Ward's cellular phone, he informed Target on multiple occasions that the accounts were in his wife's name and not his, and Mr. Ward also told Target to stop calling him, and in particular, on his cellular phone.  Doc. 9-9, p. 59, ln. 7-25; p. 60, ln. 12; Doc. 20-21, pp. 39, 40, 44, 53, 54, 56, 57, 85, 86, 92, 93; Doc. 20-23, p. 2

17.     Donna Ward had no authority to give out Ernest Ward's cell phone number to Target.  Doc. 9-9 p.23, ln. 25, p. 24, ln. 1-13; p. 46, ln. 11-16; p.58, ln. 10-25; p. 59, ln. 1-6.

18.     However, Target continued to constantly and repeatedly call Ernest Ward on his cellular phone in an attempt to collect on Donna Ward's accounts. Doc. 9-9, p. 63, ln. 11-25; p. 64, ln. 1-4; p. 86, ln. 16-25; p. 87, ln. 1-17; Doc. 20-21, pp. 39, 40, 44, 53, 54, 56, 57, 85, 86, 92, 93; Doc. 20-23, p. 2.

19.    Target's records regarding calls made on the two Donna Ward accounts were incomplete.  Doc. 9-9, pp. 160-164; Doc. 20-4, pp. 37-40, 56-64; Doc. 20-18, pp. 5-57.

**C. Course of proceedings and disposition in the court below.**

1.    Pretrial briefs were submitted on August 9, 2013.  *Welch (Ward) v. Target*, No. 8:10-bk-20178, No 8:12-ap-00145 (Bank. M.D. Fla. 2014) Doc Nos. 113 & 114; *see also* Doc. 20-29.

2.    The case was tried on August 14, 2013.  Doc. 9-9, p. 1.

3.    Appellee admitted 26 documents into evidence.  Doc. 9-9, pp. 5 & 18; Doc. 20 (Exhibits 1-26).

4.    Appellee admitted sworn testimony into evidence when she called two witnesses both with firsthand knowledge about the calls and contacts and when she cross examined Target's witnesses.  Doc. 9-9, pp. 11-253.

5.    Appellee and Appellant both submitted post trial proposed findings of fact and conclusions of law to the Court on October 25, 2013.  *Welch (Ward) v. Target*, No. 8:10-bk-20178, No 8:12-ap-00145 (Bank. M.D. Fla. 2014) Doc Nos. 113 & 114; *see also* Doc. 20-30.

6.    After reviewing all of the documents, listening to all of the witnesses and making credibility determinations, and reviewing the pre and post trial briefs, the Bankruptcy Court Judge as finder of fact found:

**FCCPA**

    a. "[O]n the frequency. On this point, **I find the credibility of the Wards to be compelling, persuasive, and their recollection is well-formed**. To be sure, they do not know the precise number of calls. They have talked about a few or several. They don't have dates. **They have a very well-formed impression, and I believe them, that the calls came frequently**. But its not just the fact that the calls came frequently or attempts were made that generated a noise on a phone or a vibration on a phone or a picture on a TV screen with respect to the land line but, rather, its their firm belief. And I think **Mr. Ward said this twice 100 percent sure that they told Target to stop calling and Target did not do that**. And to me, attempts after a warning or a request to cease constitute harassment. Now, I find that with respect to the number of times [subsequent calls], because they were imprecise and because we also have missing [Target] records— I don't know the number of times [subsequent calls], but I do find that it was more than once after warning. **I find that it [subsequent calls] occurred on the home phone and it occurred on Mr. Ward's cell phone. As I said, some of Target's calls weren't captured [by Target], some were, and I believe that where there's smoke, there's likely fire, so that's why I'm giving the credibly call, for all those reasons, on this issue, to the Ward's.** *See* Doc. 20-31, pp. 6-7.

    b. "The statute, however, says that **the action—if it can reasonable be expected to harass the Debtor, that's a violation. I think it can reasonably be expected to harass a Debtor or a member of the Debtor's family to keep calling after the person has said, 'Stop calling, or she filing bankruptcy or "we can't afford it."'** *See* Doc. 20-31, p. 8.

    c. **"Apart from Mrs. Ward, Mr. Ward said—and he did say, "I felt harassed" by the fact that they kept calling his cell phone after he said not to**—to the extent that he even made up a little white lie about being separated from the woman. And I accept that his explanation is that it was a made-up story because no one crossed him on that point and no one brought

out any evidence that they were in fact separated. **And so I find that Target violated Section 559.72 sub (7) Florida Statutes.**" *See* Doc. 20-31, p. 8.

d. **"Mr. Ward has a definite recollection about talking to someone with a Jamaican accent, and there was an agent on the phone – I mean, on the deposition, who had a Jamaican accent. So that's corroborative of his memory to that extent."** *See* Doc. 20-31, p. 9.

e. **"[H]e [Mr. Ward] believes that—and I accept as true—that he told this person not to call anymore, and he talked with somebody, whether it be the same person or someone different. He says that that particular agent said, 'Well this ain't notated' or 'this isn't notated,' meaning someone was less than precise in noting the history of what transpired during the calls themselves. And so I believe that to the extent that there a difference in the Target records with the exact wording, I credit the Wards."** *See* Doc. 20-31, p. 9.

**TCPA**

f. "Mrs. Ward apparently gave that number [ending in 1034] by mistake. I accept that. But she gave it. And so she gave permission. She signed a contract that basically said you can't – that we can call you at this number that you gave us. **Mr. Ward, who is not a party to the contract and who has the right to have people not call his cell phone number, told Target—and I accept this—to stop calling his phone number.** And so you've got this odd hybrid where you've got a contract, you've got an account Debtor who gave permission to use the number, and yet you've got an actual user who said no. **The actual user does have the right to say no, and is not compelled by the wife's contract to say yes. And so I believe that there was a violation as well of the TCPA in the form of the autodialed dialer.** *See* Doc. 20-31, pp. 9-10.

g. "The prior express consent, there's a yes and a no to that. Yes, it was given by the wife and no it was—and the wife could speak for the husband at the time. **But the husband—at least with respect to the husband's cell phone, revoked that**

10

consent and he was under no contractual duty to do anything else." *See* Doc. 20-31, p. 13.

h. "We're here for me to make an announcement on the number of calls on the cell phone of Mr. Ward that were made in violation of the TCPA. And **I have studied the record, the transcripts of the testimony, and I find that the number that is chargeable is 46.** Here's how I get there: **I believe that the two-minute phone call on June 7th is when Mr. Ward, a prior collector, would have told Target that this is his phone, not hers, they're not in a position to pay and don't call. He says he told everyone of them not to call. And so that would include that June 7th time frame. What is particularly compelling to me is that it was a two-minute phone call. You know, he could have said, you know, 'you got the wrong number, I'm not liable, goodbye,' hang up. That takes about ten seconds max. They talked for two minutes.**" Doc. 20-32, p. 4.

i. "I did not charge for the entries whereby the note is 'line idle after dial.' There were three of those after June the 7th. I don't count the initial—the initial call, but **I counted every single one of the calls after that to the cell phone [on July 7th], except for the 'line idle after dial' entries.**" Doc. 20-32, p. 4.

j. **Regarding the theory that July 12th should be the starting point: "it's clear that there were times before there [July 12], and he says: I spoke with Target a few times. It's undisputed that the spoke to them before the separation discussion.** So he may have thought it started off originally there. Maybe that was what he thought was the first call, but **it's clear by the records that that [July 12th] was not the first call**." Doc. 20-32, p. 5.

k. **"Defendant Target National Bank is found to have violated the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.72(7). Defendant Target National Bank is found to have violated the Telephone Consumer Practices Act (TCPA), 47 US.C. 227(b). Defendant is found to have made 46 calls to the consumer in violation of the TCPA of**

**which 12 were willful violations subjecting the Defendant to treble damages for those 12 calls.”** *See* Doc. 9-2, F.J.

Unless this Court finds that there is no credible evidence to support the above findings, it must affirm the resulting Bankruptcy Court's findings and conclusion as well as its subsequent decision and judgment.

## SUMMARY OF THE ARGUMENT

There is no fundamental, constitutional, or statutory right for creditors to make phone calls. Technology has made debt collector dialer calls possible, and over time they have become commonplace, but they are not a guaranteed right, and there are limits to the intrusion. Some of those limits are memorialized in the FCCPA and in the TCPA-statutes both at issue in the trial and appeal. These limits have been imposed to protect consumers and family members' privacy and to prevent harassment and abuse.

### A. The FCCPA

In its appeal, Target asks and answers the wrong questions. The proper question on appeal is not whether it is permissible under the FCCPA to call a consumer debtor despite notice of inability to pay, notice of refusal to pay, and a cease calls directive (although it is not permissible). Nor is the question whether the plaintiff proved the defendant made some certain magical threshold number of calls (there is no magic number).

The proper question on appeal is whether or not there was evidence presented to the Bankruptcy Court to enable it to find that <u>the conduct at issue could reasonably be expected to abuse or harass the debtor</u>.  And the answer to this question is yes.

Here, the Bankruptcy Court found (after the Plaintiff Appellee presented sworn testimony and admitted 26 documents into evidence) that Target called the account holder (Mrs. Donna Ward) and her husband non-account holder (Ernest Ward) 111 times and as many as six times a day despite notice it should have stopped.  Importantly, what is and is not abusive and harassing is left to the sole discretion of the factfinder.  Here, the factfinder found that the collection activity was abusive and harassing, and as such, violative of the FCCPA.  The Bankruptcy Court's credibility determinations, weighing of the evidence, findings of fact and conclusions are entitled to a high degree of deference and should not be disturbed.

**B. The TCPA**

With respect to Appellee's TCPA claim, Target again asks and answers the wrong questions.  The proper question on appeal is not whether Donna Ward consented to Target dialer calls or if she could and did revoke her consent.  The proper question on appeal is <u>whether Target using a dialer called Ernest Ward on his wireless phone without his express consent</u>.  And the answer is yes.

Here, the Bankruptcy Court found (and it was undisputed) that Target used a dialer to call Ernest Ward's cell phone. And at trial, Target did not establish its affirmative defense of express consent. First, Ernest Ward never had an account with Target, and he never told Target they could call him. Second, there was evidence presented below to enable the Bankruptcy Court to find that Ernest Ward revoked any alleged express consent when he asked Target to stop calling him on an account that was not his. The Bankruptcy Court's, serving as the factfinder and responsible for making credibility determinations, weighing the evidence, issuing findings of fact, and making conclusions regarding TCPA consent and revocation are entitled to a high degree of deference and should not be disturbed.

## **ARGUMENT**

### I. **Bankruptcy Court is the Factfinder, and its Findings Should not be Disturbed.**

Factual findings made by the trial court after a bench trial are reviewed for clear error, which is a highly deferential standard of review. *Holton*, 425 F.3d at 1350. The findings of fact of a bankruptcy court should not be disturbed by the district court unless there is "most cogent evidence of mistake or miscarriage of justice." *Slodov v. U.S.*, 552 F.2d 159, 162 (6th Cir. 1977) (quoting *McDowell v. John Deere Indus. Equip. Co.*, 461 F.2d 48, 50 (6th Cir. 1972), rev'd on other grounds, 436 U.S. 238, (1978)).

When a district court acts as an appellate court, it is subject to the same limitations imposed upon any appellate court. The district court may not make its own independent factual findings. If the bankruptcy court is silent or ambiguous about a determinative factual question, the district court may not engage in its own fact finding, but instead must remand the case to the bankruptcy court for the necessary factual determination. *In re Walker*, 726 F.2d 452, 454-55 (8th Cir. 1984); *In re Neis*, 723 F.2d 584, 588-90 (7th Cir. 1983); *In re Edward M. Johnson and Assoc.*, 845 F.2d 1395, 1401 (6th Cir. 1988) (quoting *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987).

"A finding of fact is 'clearly erroneous' when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Mitchell v. United States*, 141 F.3d 8, 17 (1st Cir. 1998). Even where two views of the evidence are plausible, the trial court's preference cannot be deemed to be clearly erroneous, and may not be disturbed even if the appellate court would have held otherwise. *Williams v. Poulos*, 11 F.3d 271, 278 (1st Cir. 1993*)*.

When a finding is based on the credibility of two or more witnesses, "each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, **that finding, if not internally inconsistent, can virtually never be clear error**." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985); *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir. 1997) (emphasis

added). Credibility determinations are typically the province of the factfinder because the factfinder personally observed the testimony and was in a better position than an appellate court to assess the credibility of witnesses. *Viehman v. Schweiker*, 679 F.2d 223, 227-28 (11th Cir. 1982). A "trial judge's ... choice of whom to believe is conclusive on the appellate court unless the judge credits exceedingly improbable testimony." *U.S. v. Cardona-Rivera*, 904 F.2d 1149, 1152 (7th Cir. 1990).

The trial courts are not divested of their primary role in resolving disputes, whenever appellate review is sought. *Lough v. Brunswick, Corp*., 103 F.3d 1517, 1519-20 (Fed. Cir. 1997). The trial process is the mechanism, in our system of justice, for finding facts, determining credibility, weighing the evidence, balancing the circumstances, and ascertaining the truth. *Id*. The trier of fact, applying the rules of statute and the experience of precedent to the facts of the particular case, must exercise judgment in light of the probative value of the evidence, informed by the complex of societal and policy considerations that are the foundation of our system of law. *Id*. The trial court is not a mere compiler of data; it is a tribunal of justice. *Id*. The role of the appellate court is to correct errors at trial that prejudiced the outcome, not to make de novo fact-based rulings as if there had been no decision at trial. *Id*. When the law has been correctly stated and the evidence has been weighed to plausible effect, such that the conclusion is not

clearly erroneous (upon bench trial), the appellate court must give appropriate deference to the judgment of the trier of fact. *Id*. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985). In the resolution of disputes, the trial is the "main event," not a "tryout on the road." *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977).

Target wants this Court to reweigh, reevaluate, and rebalance the evidence, with no deference to the procedures and judgment at trial, and that is an improper appellate role.

## II. There was sufficient evidence from which the factfinder could find Target violated the FCCPA.

### A. FCCPA Background and Purpose

The FCCPA, was enacted by the Florida legislature as a means of regulating collection activities within the state (including creditors and debt collectors). *Leblanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). "The FCCPA is a laudable legislative attempt to curb what the legislature evidently found to be a series of abuses in the area of consumer/debtor-creditor relations." *Harris v. Beneficial Fin. Co. of Jacksonville,* 338 So. 2d 196, 200-201 (Fla. 1976); 10A FLA. JUR.2D DEBTOR § 138 (2010). Importantly, the FCCPA also defines

and protects a consumer debtor's right to privacy. *Laughlin v. Household Bank, Ltd.*, 969 So.2d 509, 512-13 (Fla. 1st DCA 2007).

**B.** Perspective from Which the FCCPA Must Be Construed and Evaluated

The FCCPA, must be construed liberally in favor of the consumer debtor. Fla. Stat. § 559.77; *Mammen v. Bronson & Migliaccio, LLP*, 715 F.Supp.2d 1210, 1213-14 (M.D. Fla. 2009); *Ferguson v. Credit Management Control, Inc.*, 140 F.Supp.2d 1293, 1297 (M.D. Fla. 2001). The FCCPA is also supposed to be construed in a manner that is most protective of the consumer. *See* Fla. Stat. § 559.552. In addition, all facts and circumstances must be evaluated under the least sophisticated consumer standard. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the same least sophisticated consumer standard as that of the Federal Trade Commission Act, which was meant to protect the public, including the "ignorant, the unthinking, and the credulous."). To evaluate a claim under the least-sophisticated consumer standard means to ensure that the consumer protection statute protects all consumers - the gullible as well as the shrewd. *See LeBlanc*, 601 F.3d at 1194. The "least sophisticated consumer" standard provides more protection to consumers than would a "reasonable consumer" standard. *Id*.

**C.** The Language of the FCCPA

Appellee brought an action under Fla. Stat. § 559.72(7). Subsection 7 of the FCCPA states, "In collecting consumer debts, no person shall: . . . (7) Willfully

communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

A plaintiff need not establish that the defendant committed a violation willfully - she need only establish that the action taken was willful-not accidental.[1] A plaintiff suing under the FCCPA, need not prove that the defendant intended to annoy, abuse, or harass-only that the communication or conduct at issue <u>could reasonably be expected</u> to abuse or harass the debtor.  *See* Fla. Stat. § 559.72(7).

### D. <u>Target's Flawed Position</u>

Regarding whether or not the calls should be considered harassing, with the exception of *Story*, Target only cites cases interpreting the language of the Fair Debt Collection Practices Act (FDCPA) (i.e. *Dyer*, *Cokeley*, *Mimbs*, *Tucker*, etc.). But the language in the FDCPA is significantly different from the language in the FCCPA.  For example, the FCCPA does not require the plaintiff to put in writing a cease communications or refusal to pay directive.  *See* Fla. Stat § 559.55 *et. seq*. compared with 15 U.S.C. § 1692 *et. seq.*  Also, the FCCPA does not require that

---

[1] *See e.g.* 11 U.S.C. § 105; *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir.1990) (The focus of the court's inquiry is not on the subjective beliefs or intent of the actors in complying, but whether in fact their conduct complied.); *Jove Engineering, Inc. v. Internal Revenue Service*, 92 F.3d 1539, 1555 (11th Cir.1996) (To establish willfulness, the Appellee must show that the Appellants "intentionally committed the violative act.").

the plaintiff prove "intent" to annoy, abuse, or harass. *See* Fla. Stat § 559.55 *et. seq*. compared with 15 U.S.C. § 1692 *et. seq*.[2]

Subsection 7 of the FCCPA only requires the plaintiff prove that there was a willful communication or willful conduct that could reasonably be expected to abuse or harass the debtor or any member of her or his family. *See* Fla. Stat. § 559.72(7).

Target argues that it should be permitted to call so that it does not have to sue. There is no right to make debt collection calls. *Foti v. NCO Fin. Sys., Inc.*, 424 F.Supp.2d 643, 659 (S.D. N.Y. 2006) citing *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993). Phone calls - especially autodialer calls to cell phones - can be highly invasive and intrusive. Most Americans/Floridians have cell phones on their person or near their person virtually all day everyday and would hear, see, or feel most if not all calls. This fact escapes Target.

---

[2] While a court may look to federal precedent regarding the FDCPA when relevant to evaluating the same or similar provision of an FCCPA case, it **must** keep in mind the differences between the statutes and find that where the two conflict, the more protective of the two statutes **must** apply. *See* Fla. Stat. § 559.552 ("This part is in addition to the requirements and regulations of the federal act. In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail.) (emphasis added). As such, the analysis and holdings in Target's FDCPA cases do not apply. Notwithstanding, *see Hendricks v CBE Group, Inc.*, 891 F.Supp.2d 892, 896 (N.D. Ill. 2012) (Ruling where a plaintiff has shown that he asked the caller to stop calling or has informed caller that it has the wrong number, and the caller nevertheless continued to call the plaintiff, courts have found harassment and a violation of the consumer protection statute.); *see also Pratt v. CMRE Fin. Svcs., Inc.,* 2012 WL 86957 *3 (E.D. Mo. 2012) citing *Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703 *14 (W.D. N.Y. 2011); *Kerwin v. Remittance Assistance Corp.* 559 F.Supp.2d 1117, 1124 (D.Nev. 2008)). Further, the volume and pattern of the calls may themselves evidence a violation. *Bassett v. I.C. System, Inc.*, 715 F.Supp.2d 803, 810 (N.D. Ill. 2010).

Target also wants to be the one to decide what is and is not harassing, which is akin to the fox asking to guard the henhouse. The violators should not be given authority to decide what is and is not harassing for to do so would result in no findings of harassment.

Also, when a consumer objects to calls, a creditor has other options. It does not have to sue. For example, it can send written correspondence, it can credit report, it can write off debt. Creditors, such as Target, want instead to call because calls are inexpensive and people who are repeatedly called often feel trapped, give up, and pay to make the calls stop. This is precisely what the consumer protection laws are designed to prevent.

Target also tries to characterize its calls as follow up calls - some sort of friendly reminder to follow up on a payment plan. It also tries to re-characterize the calls as statistics using averages instead of what actually occurred. A better and more accurate characterization is: Target along with its agent Alliance One, called the Ward's using a mindless robo autodialer 111 times and as many as six times per day to harass the Ward's into paying them.

**E.** Sworn Testimony and Documentary Evidence Established Target's FCCPA Violation

Here, the Bankruptcy Court found that Target called the account holder (Donna Ward) and her husband non-account holder (Ernest Ward) many times after notice of inability to pay, after notice of refusal to pay, and after cease call

requests.[3]  The Bankruptcy Court made those findings after the Plaintiff Appellee presented sworn testimony from two witnesses and admitted 26 documents into evidence.[4]  The Target witness and records established the total number of calls (111) and calls per day (as any as 6) it initiated to the Ward's.[5]  The Target records also confirm at least five contacts, and there were calls after the contacts.[6]  The AT&T cell phone records established the number, date, time, and length of the relevant calls.[7]

Plaintiff offered more than enough evidence for the Bankruptcy Court to make a finding that there was sufficient basis for an FCCPA violation.  In addition to eliciting favorable sworn testimony at trial from the Ward's (both of whom had firsthand knowledge of the calls), Plaintiff admitted into evidence the: Ward declarations, Ward deposition transcripts, Target account records, and AT&T cell phone records.[8]  Calling 111 times, as many as six times a day, and after notices of: (a) inability to pay, (b) refusal to pay, and (c) cease call requests could reasonably be expected to abuse or harass a debtor - especially when one of the debtors was not even the account holder and also especially when viewing the facts from the

---

[3] Doc. 20-31; Doc. 20-32; Doc. 9-2.
[4] Doc. 9-9, pp. 48-50, 53, 59-60, 63-64, 67 & 86-87; Doc Nos. 20-1 through 20-26.
[5] Doc. 9-9, pp. 123-124; Doc 20-4, pp. 56-64.
[6] Doc. 9-9, p. 124; Doc 20-14, pp. 56-64.
[7] Doc. 20-18, pp. 5-57
[8] Doc. 9-9, 20-22, 20-23; 20-20; 20-21; 20-4, 20-5, 20-19.

proper perspective (liberally in favor of the debtor; in a manner that is most protective of the person; and under the least sophisticated consumer standard).[9]

**F.** The Factfinder Gets to Decide What is and is not Harassing

**Importantly, whether the calls and/or conduct at issue can reasonably be expected to abuse or harass is the sole purview of, within the sole discretion of, and to be decided only by the factfinder(s), which in this case was the Bankruptcy Court Judge**. Whether particular conduct would harass or deceive the least sophisticated consumer is a question for the factfinder. *Jeter,* 760 F.2d at 1179. Likewise, whether communications are so frequent so as to be reasonably expected to harass is left to the decision of the factfinder. *Story v. J.M. Fields, Inc.,* 343 So.2d 675, 677 (Fla. 1st DCA 1977). The issue of whether communications violate the FCCPA is for the factfinder to decide. *Ortega v. Collectors Training Institute of Illinois, Inc.,* 2011 WL 241948 *9 (S.D. Fla. 2011) (citing *Jeter*, 760 F.2d at 1179).

As held by the Eleventh Circuit, "Although the parties agree on the basic facts of the case, they disagree upon the proper inferences to be drawn from [the collection activity at issue]. Such a disagreement, if reasonable, is one for resolution by the trier of fact." *Jeter*, 760 F.2d at 1179; *see also Ortiz v. Accounts*

---

[9] Making 111 total calls often six calls a day alone (esp. in light of the cease call directives) is sufficiently harassing. Who besides creditors/debt collectors, deranged stalkers, and delusional ex significant others call someone 111 total times and doing so by calling 6 times a day?

*Receivable Mgmt., Inc.*, 2010 WL 547910 *3 (S.D. Fla. 2010) (whether the number and content of telephone calls constitutes willful conduct reasonably expected to harass in violation of § 559.72(7) is to be decided by the factfinder); *Scott v. Fla. Health Sciences Ctr., Inc.*, 2008 WL 4613083 at *4 (M.D. Fla. 2008); *Barnes v. Seterus, Inc.*, 2013 WL 6834720 *2 (S.D. Fla. 2013); *Derricotte v. Pressler & Pressler, LLP*, 2011 WL 2971540 *3 (D. N.J. 2011); *Regan v. Law Offices of Edwin A. Abrahamsen & Assoc., P.C.*, 2009 WL 4396299 *6 (E.D. Pa. 2009).

In essence, the factfinder must decide (by construing the FCCPA in such a manner as to protect consumers, and using the least sophisticated consumer standard), if the conduct at issue could be found to be abusive or harassing. That is precisely what the Bankruptcy Court did below after considering all of the sworn testimony and documentary evidence. Here, the Bankruptcy Court Judge serving as factfinder, found Target's communications and conduct to be abusive or harassing, and as such, violative of the FCCPA. This finding was supported by sufficient evidence (Doc. 9-9, 20-20, 20-21, 20-22, 20-23, 20-4, & 20-18), and as such, the findings and decisions should not be overturned or disturbed. *See* Factual Findings on pages 8-11 above mirrored in Doc. 20-31, 20-32 & Doc. 9-2.

## III. There was sufficient evidence from which the factfinder could find Target violated the TCPA.

### A. TCPA Background and Purpose

The TCPA was enacted to protect the privacy of consumers. *See* 47 U.S.C. § 227 *et. seq.* The TCPA protects the rights of consumers to be free from automated/robo telephone calls to a consumer's cellular telephone. *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740 (2012); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo*, 755 F.3d 1265 (11th Cir. 2014). Senator Hollings, the TCPA's sponsor, described these automated/robo calls as "the scourge of modern civilization." 137 Cong. Rec. 30,821 (1991). He went on to state, "They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." *Id*.

Privacy interests are of the utmost importance not only to Floridians, Americans, and their Congress, but also to the United States Supreme Court who used the word "invasive" twice, "intrusive" four times, and "privacy" four times in its *Mims* TCPA decision. *Mims*, 132 S.Ct. 740.

## B. The Language of the TCPA

The plain language of 47 U.S.C. § 227(b)(1)(A)(iii) explains that it is a violation to make any call, using an automated telephone dialing system, to any telephone number assigned to a cellular phone. *Mims*, 132 S.Ct. 740; *Osorio,* 746 F.3d at 1250; *Breslow*, 755 F.3d at 1266-67. The only exemptions relate to calls

for emergency purposes[10] or calls made with the prior express consent of the called party. *Mims*, 132 S.Ct. 740; *Osorio,* 746 F.3d at 1250; *Breslow*, 755 F.3d at 1266-67. "Should a question arise as to whether express consent was provided, **the burden will be on the creditor** to show it obtained the necessary prior express consent." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559 (2008) (emphasis added).

### C. Sworn Testimony and Documentary Evidence Established Target's TCPA Violation

It was undisputed that Target used an automated predictive dialer[11] to make calls on the Donna Ward accounts. And it was also undisputed that Target made automated dialer calls to the cell phone number ending in 1034, which did not belong to the account holder, Donna Ward, but instead was a wireless number that belonged to a non-account holder, Ernest Ward. As such, Appellee established a TCPA claim. Once that TCPA claim was established, the only issue the trial court had to decide was the affirmative defense of express consent, which was Target's burden to prove. After considering all of the testimony and documents submitted into evidence, the factfinder found that **Target did not establish such a defense**. *See* Doc 20-31, p. 13.

---

[10] The parties agree that none of the calls were made for emergency purposes.

[11] Calls made by automated or predictive dialers are subject to the TCPA. *In the Matter of Rules & Regulations Implementing the TCPA of 1991,* 23 F.C.C.R. 559, 566 ¶ 14 (Jan. 4, 2008); *Meyer v. Portfolio Recovery Assocs. LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012), *cert. denied,* 133 S.Ct. 2361 (2013); *Swope v. Credit Mgmt., LP,* 2013 WL 607830 at *4 (E.D. Mo. 2013); *Vance v. Bureau of Coll. Recov., LLC,* 2011 WL 881550 at *2 (N.D. Ill. 2011).

**D.** The Failed Defense of Express Consent

    **1. Express consent is an affirmative defense that must be proved by the defendant beyond peradventure**.

Prior express consent is an affirmative defense to a TCPA claim. *Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772 * 4 (M.D. Fla. 2013); *Buslepp v. B & B Entertainment, LLC*, 2012 WL 4761509 *4 (S.D. Fla. 2012). And all of the essential elements of the affirmative defenses raised by the defendant must be established beyond peradventure.[12] *Darvill v. Lyons*, 2013 WL 237795 *2 (S.D. Fla. 2013); *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir. 1986).

    **2. Target did not, could not and would never be able to establish that the person it actually called (Ernest Ward) provided express consent**.

Ernest Ward was the person whom Target actually called regardless of its intent. As such, he was the "called party." *Osorio*, 746 F.3d at 1250-56; *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639-43 (7th Cir. 2012). Only the person called (the subscriber; the primary user of the wireless phone) can expressly consent to dialer calls. *Osorio*, 746 F.3d at 1250-56; *Soppet*, 679 F.3d at 639-43. Ernest Ward never provided his cell phone number to Target or otherwise consented to calls from Target. *See* Doc 9-9 pp. 19-91. It was undisputed that: (a) Ernest Ward was not on the account and not affiliated with the account in any way; (b) the account holder was Donna Ward; (c) Ernest Ward did not apply for Target

---

[12] Meaning: 1: DOUBT [a fact established beyond - ] 2: CHANCE 4a [beyond - of doubt]. *Merriam-Webster's Collegiate Dictionary* 918 (11th ed. 2003).

credit, provide his phone number to Target, or agree to being called on the account at all on the account much less on his wireless phone number. *See id.* As such, Target failed to prove that the called party, Ernest Ward, expressly consented to Target calls.

### 3. Donna Ward Could Not Legally Consent for Ernest Ward.

One can only consent to a call if one has the authority to do so. *Osorio*, 746 F.3d at 1252. Only the cell phone subscriber can grant consent for autodialed calls, either directly or through an agent. *See id* at 1253. The only possible way Donna Ward could have legally provided express consent on behalf of Ernest Ward is for Ernest Ward to have given her authority, and he did not.

First, Donna Ward had no common authority over the phone number; she had her own separate and distinct phone number. Doc. 9-9 p. 21. Second, there was no evidence presented that Donna Ward was an agent of Ernest Ward. Under Florida law an agency relationship can only arise by written consent, oral consent, or by implication from the conduct of the parties. *Thomkin Corp. v. Miller,* 24 So.2d 48, 49 (Fla. 1945). An agency by implication, or apparent agency, arises only when there has been: (1) a representation by the principal that the actor is his or her agent, (2) reliance on that representation by a third party, and (3) a change in position by the third party in reliance on that representation. *Mobil Oil Corp. v. Bransford,* 648 So.2d 119, 121 (Fla. 1995). Importantly; however, when there has

been no representation of authority by the principal, no apparent or implied agency arises. *Smith v. Am. Auto. Ins. Co.,* 498 So.2d 448, 449 (Fla. 3d DCA 1986). The acts of the agent, standing alone, are insufficient to establish the agent is authorized to act for the principal. *Owen Indus., Inc. v. Taylor,* 354 So.2d 1259, 1262 (Fla. 2d DCA 1978); *Taco Bell of Cal. v. Zappone,* 324 So.2d 121, 124 (Fla. 2d DCA 1975). It is axiomatic that the entity alleging agency is required to prove it.

As applied to our case, the key facts regarding agency were never established by Target. Target never established that Ernest Ward gave any authority to Donna Ward. The Ward's never gave each other authority to consent to phone calls from third parties. Doc. 9-9, p. 23, ln. 25; p. 24, ln. 1-13; p. 58, ln. 13-25; p. 59, ln 1-6. Sharing a home and sharing a cell-phone plan is not enough. *Osorio*, 746 F.3d at 1254. As detailed in *Osorio*, if mere cohabitation or sharing a cell phone plan was enough, it would lead to an absurd and terrible result. *Id.* "Parents and cohabitants everywhere would be shocked to learn that every adult in their household is legally entitled to consent to having autodialing debt collectors call any of their cell phones." *Id.* Target was never able to establish that Donna Ward was an agent of Ernest Ward, and as such, she was not legally able to consent for him.

### 4. Even if there was original express consent, it was revoked.

Importantly, even if original express consent was proven by Target (and it was not), Ernest Ward instructed Target more than once that he was not on Donna Ward's account, the phone number they were calling was his not hers, and to stop calling him. Doc. 9-9, p. 59, ln. 7-25; p. 60, ln. 12; Doc. 20-23; Doc. 20-21, pp. 39, 40, 44, 53, 54, 56, 57, 85, 86, 92 & 93.[13]

Target disputes receipt of some of those instructions; however, that issue was subject to a credibility and weight of the evidence determination, which was the within the Bankruptcy Court's purview, and the Bankruptcy Court did not believe Target. Further, both Target's records and AT&T's phone records evidence: (a) Target calls to Ernest Ward on his cell phone, (b) contacts made with Ernest Ward after calling his cell phone, (c) some of the contacts were documented and significant in length, (d) some of the calls and contacts were not documented (no Allied calls and some records purged), (e) the documented contacts were highly abbreviated and summarized, and (f) there were subsequent dialer calls to Ernest Ward on his cell phone. Doc. 20-4, pp. 37-40 & 56-64; Doc. 20-18; Doc. 9-9, pp. 124-128, 161-166, Doc. 9-7, p. 17.

Importantly, the factfinder is entitled to make credibility determinations and weigh the evidence. Here, the Bankruptcy Court made a credibility determination.

---

[13] Donna Ward also instructed Target to stop calling her (Doc. 9-9, p. 48, ln. 20-23; p. 49, ln. 1-7; p. 53, ln. 8-25; p. 67; ln. 14-19) and her husband (Doc. 9-9, p. 49, ln. 16-25; p. 50, ln. 1-4; p. 53, ln. 8-25).

Doc 9-7 ("I find the credibility of the Wards to be compelling, persuasive, and their recollection is well-formed." "They [the Ward's] have a very well-formed impression, and I believe them, that the calls came frequently." "As I said, some of Target's calls weren't captured [by Target], some were, and I believe that where there's smoke, there's likely fire, so that's why I'm giving the credibly call, for all those reasons, on this issue, to the Ward's." "Mr. Ward has a definite recollection about talking to someone with a Jamaican accent, and there was an agent on the phone – I mean, on the deposition, who had a Jamaican accent. So that's corroborative of his memory to that extent." "I believe that to the extent that there a difference in the Target records with the exact wording, I credit the Ward's."). After making such credibility determinations, the factfinder found that Mr. Ward gave Target at least one cease call instruction, which was not heeded by Target. Doc. 20-31, 20-32 & 9-2.

Further, oral revocation of consent is permitted. *Osorio*, 746 F.3d at 1254-56, *Gager v. Dell Fin. Svcs., LLC*, 727 F.3d 265, 268-74 (3d Cir. 2013). A person who has previously provided a phone number to a creditor for purposes of account communication can change his or her mind and ask the creditor to not call it or to stop calling it. *Osorio*, 746 F.3d at 1254-56; *Gager,* 727 F.3d at 268-74.

As such, even if any original consent ever existed, it was revoked, and any Target initiated autodialer calls to Ernest Ward's wireless phone after the oral revocation constituted willful violations of the TCPA.

### a. Any terms and conditions in the contract are irrelevant.

Target argues that consent could not be orally revoked because of a contract between Donna Ward and Target. This same argument was made by Dell Financial in *Gager* and was rejected by the Third Circuit. *Gager,* 727 F.3d at 268-74. For that reason and others, the Bankruptcy Court did not accept this argument and neither should the District Court. There are six reasons why this Court should reject the contract argument any one of which is sufficient:

i. Target did not have a contract with Ernest Ward.

ii. The contract with Donna Ward did not bar, limit, restrict, or even mention revocation.

iii. The TCPA does not prohibit, limit, or restrict revocation in any way, even where there is a contract, and the TCPA is a remedial statute that must be interpreted in a light most favorable to the consumers.

iv. The FCC issued declaratory rulings that oral revocation is permissible even where there is a contract or agreement.

v. Prior case law requires recognition of oral revocation.

vi. Public policy requires consumers be permitted to orally withdraw consent.

First, Target had no contract with Ernest Ward; therefore, Ernest Ward was not bound by the terms and conditions in any contract between Target and

someone else. Since Ernest Ward was the "called party," he can issue a cease calls directive, and it must be honored. Reaching a conclusion otherwise would lead to an absurd result. It was Ernest Ward's privacy interest at stake-not Donna Ward's, and Ernest Ward should be permitted to verbally inform Target of any mistake or problem and be free from repeated annoying, intrusive, harassing, and violative dialer calls to his cell phone.

Second, the contract at issue is silent as to consent revocation.[14] While the terms and conditions at issue may provide for original consent (if the number had been the account holder's - Donna Ward's), the terms and conditions do not bar, limit, or restrict revocation of consent in any way. Therefore, Target's argument that the contract was unilaterally modified does not hold water. Simply put, there was no consent revocation provision to modify.

Target's argument also fails the logic test. Creditors, Target included, routinely accept oral consent and oral changes to demographic information (i.e. names, address, phone numbers, etc.). If we apply Target's argument, it would be barred from accepting consent and any updated information it may receive orally in the future (i.e. name change, address changes, phone number change, etc.). This would be an absurd, inconsistent, and illogical result. Target should not be permitted to (a) accept phone numbers orally but at the same time (b) refuse to

---

[14] *See* Doc 9-9, p. 157, ln. 7-21; Doc 9-13; Doc. 20-4, pp. 15-24.

accept a cease calls directive orally-it cannot have it both ways. Oral changes should be permitted across the board or not at all. Additionally, the account holder (Donna Ward) stopped affirming the terms and conditions for credit when she ceased using the card and stopped making her payments.[15]

Third, nothing in the statute itself limits revocation or bars oral revocation in the face of any contractual terms or conditions. The TCPA does not provide a safe harbor for dialer calls to cell phones despite consent revocation <u>if</u> there is a contract term or condition. *See* 47 U.S.C. § 227(b). Silence as to revocation should be interpreted as a right to revoke instead of otherwise. *Osorio*, 746 F.3d at 1254-56; *Gager*, 727 F.3d at 270-71.

The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls. *Mims*, 132 S.Ct. 740 (2012); *see also* S. Rep. 102–178, at 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972; 27 FCC Rcd. at 15391–92 ¶ 2 (discussing TCPA's purpose of protecting consumers against unwanted contact from automated dialing systems). Because the TCPA is a remedial statute, it must be broadly construed in favor of the consumers. *Mey v. Monitronics Intern, Inc*., 959 F.Supp.2d 927, 930 (N.D. W.Va. 2013) citing *Holmes v. Back Doctors, Ltd*., 695 F.Supp.2d 843, 854 (S.D. Ill. 2010). Remedial statutes "should be liberally construed and should be interpreted (when that is

---

[15] If using a credit card is sufficient to affirm and ratify the terms and conditions for credit and any amendments thereto, the reverse must also be true.

possible) in a manner tending to discourage attempted evasions by wrongdoers."

*Scarborough v. Atlantic Coast Line R. Co*., 178 F.2d 253, 258 (4th Cir. 1950).

Any silence, ambiguity, or question in interpreting the statute should be resolved in

favor of the consumer. *Beal v. Wyndham Resorts, Inc*., 956 F.Supp.2d 962, 976-80

(W.D. Wisc. 2013) (holding that absence of a statutory revocation right in the

TCPA does not preclude consumers from revoking prior express consent);

*Adamcik v. Credit Control Services, Inc*., 832 F.Supp.2d 744, 748-51 (W.D. Tex.

2011) (noting that, if Congress wanted to limit a consumer's right to revoke

consent under the TCPA, it should have done so in the statute).  Therefore, the

TCPA's silence as to revocation should <u>not</u> be seen as limiting a consumer's right

to revoke prior express consent; instead, we should view the silence in the statute

as evidence that the right to revoke exists. *Gager*, 727 F.3d at 271-72.

Fourth, the FCC in its Declaratory Ruling, which is deserving of *Chevron*

deference, and as such, is binding[16], confirmed that "consumers may revoke

consent through any reasonable means." *In the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 300 F.C.C.R..

7961, 7993-99, ¶ 55-70.  The FCC confirmed consumers have the right to revoke

consent, rejected the "statutory" argument made by Target, and clarified that a

caller cannot designate an exclusive means by which consumers must revoke

---

[16] *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A*., 781 F.3d 1245, 1256-
57 (11th Cir. 2015).

consent.  *See id.*  In its ruling, the FCC cites to and agrees with <u>prior</u> TCPA orders, rulings, and decisions, which have been pending for years and even affirmatively stated, "[o]ur interpretation that consumers may revoke previous consent-an interpretation already made by federal courts-establishes no new law or prohibition on speech.  Further the Supreme Court has 'repeatedly held that individuals are not required to welcome unwanted speech into their homes and that the government may protect this freedom.'"  *See id at 7995, ¶ 60* quoting *Frisby v. Schultz*, 487 U.S. 474, 485 (1988); *see also F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 748 (1978) ("[I]n the privacy of the home, ... the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder.").

The TCPA, which was enacted in 1991, never contained a bar, limit or restriction on consent revocation.  The newest 2015 Declaratory Ruling is not novel, new, retroactive nor does it violate due process or alter any legal landscape. It merely reiterated, explained, and clarified what the law is, always has been, and should be.

Target cites to two Supreme Court cases (*Christopher* and *Fox)* where the Court stuck down two different administrative rulings.  But those two cases simply do not apply because the FCC Declaratory Ruling at issue (unlike the agency interpretations at issue in *Christopher* and *Fox* cited by Target) is not retroactive. A retroactive law takes away or impairs vested rights acquired under existing laws,

creates new obligations, imposes new duties, or attaches a new and different legal effect to transactions already past.

Here, the 2015 FCC Declaratory Ruling at issue never took away or impaired an existing right. There has never been a right to revoke consent. The FCC did not create a new obligation, impose new duties, or attach a new and different legal effect to a transaction. The FCC merely stated what Congress intended, what the FCC has already said, and what judges have been holding - consent can be revoked and it can be revoked orally. There has never been and there is not presently any law or regulation (prior or otherwise) that has ever barred, limited, or restricted a consumer from revoking consent under the TCPA.

Since the inability to revoke consent is a mere desire and a legal fantasy made up by creditors, debt collectors, and telemarketers (and their counsel), an agency declaratory ruling debunking such a desire and fantasy cannot be said to be retroactive.

Fifth, binding Eleventh Circuit case law and the vast majority of cases across the country, permit oral revocation and requires it to be recognized. *Osorio*, 746 F.3d at 1254-56, *see also Gager*, 727 F.3d at 268-74; *Smith v. Markone Fin., LLC*, 2015 WL 419005 *3 (M.D. Fla. 2015) (Consent can be revoked either orally or in writing.); *Coniglio v. Bank of Am., N.A.*, 2014 WL 5366248 *3 (M.D. Fla. 2014) (Called parties may revoke their consent orally.); *Walker v. Transworld Sys., Inc.*,

2014 WL 7225212 *3 (M.D. Fla. 2014) (A consumer's consent under the TCPA may be revoked orally.); *Morris v. Ocwen Loan Servicing, LLC*, 2015 WL 5072011 *3 (S.D. Fla. 2015); *Hitchman v. Nat'l Enter. Sys., Inc*., 2014 WL 912363 *3 (S.D. Fla. 2014); *Buchholz v. Valarity, LLC*, 2014 WL 5849434 *7 (E.D. Mo. 2014) (This Court is persuaded by the reasoning of the Third and Eleventh Circuits with respect to the availability of oral revocation and concludes that Plaintiff's assertion that he orally revoked his consent to be contacted on his cell phone is cognizable as a matter of law under the TCPA.); *Reardon v. Uber Techs., Inc*., 2015 WL 4451209 *10 (N.D. Cal. 2015); *Gutierrez v. Barclays Group*, 2011 WL 579238 *4 (S.D. Cal. 2011); *Beal*, 956 F.Supp.2d at 976-80; *Adamcik*., 832 F.Supp.2d at 748-51; In fact, most cases before and all cases after *Gager* and *Osorio* ruled that oral revocation is permissible or required and should not be barred, limited, or restricted in any way. And Appellant cites no case ruling that oral revocation is insufficient as a matter of law in the Eleventh Circuit or in Florida.

Sixth, public policy requires that consumers be permitted to orally revoke consent and not be subjected to robo dialer calls and privacy intrusion forever. A corporation should not be permitted to bury in fine print terms or conditions, which attempt to avoid compliance with consumer protection laws. For example, creditors may not contract around the consumer protection requirements in TILA.

*See Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178 (11th Cir. 1982); *Abercrombie v. Wells Fargo Bank, N.A.* 417 F.Supp.2d 1006, 1007-09 (N.D. Ill. 2006). "A statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945). Additionally, it would be illegal for a creditor to force a consumer to agree in fine print to never in the future hire counsel or refrain from including the debt in a future bankruptcy. Certain consumer protections must always be available, and revoking consent is one of them. Preventing future revocation and permitting unfettered dialer calls to consumers' cell phones, even amidst clear objection, is contrary to the TCPA's purpose and its drafters' intent, and the consumer would not expect that by merely providing a number, doing so would be forever irrevocable and result in dozens, hundreds or thousands of autodialer calls even despite clear objections. As such, public policy requires consumers be able to orally revoke consent.

Target wants a ruling that would enable it to robo call and abuse consumers in perpetuity and avoid TCPA compliance. This should not be permitted. As such and for the reasons described above, Ernest Ward, who was not even the account holder, was able to orally revoke any alleged original consent when he asked for the calls to stop.

**E.** <u>Trial Court's Finding Regarding Date of Revocation, Subsequent Dialer to Cell Call Count, and Damages Calculation</u>

After trial, the Bankruptcy Court made a factual finding that the date of revocation was June 7, 2010, and that there were 46 subsequent dialer calls to the cell phone number ending in 1034.  Doc. 9-11; Doc. 20-32.  There was sufficient sworn testimony (Doc. 9-9, pp. 19-91) and information in documents admitted into evidence (Doc. 20-1 through 20-26) to support such a finding.

First, Ernest Ward's testimony was clear and unmistakable.  He testified in trial that he got calls, he had conversations with Target, and he instructed Target the account was his wife's-not his, the phone number was his and to stop calling it.  Doc. 9-9, pp. 57-91; Doc. 20-21, pp. 39-93; Doc. 20-23.

Target spends a great deal of space and energy attempting to discredit Ernest Ward.  Specifically, Target argues that Mr. Ward's testimony at trial was different from his testimony in his deposition.  Upon close review, we see that Target's position is incorrect.  Mr. Ward's deposition testimony was not inconsistent with his trial testimony; he was not making things up.  There were some differences; the deposition transcript is not identical in every way to the trial transcript (none are and neither was Target's/Wolfe's); however, the differences are attributable to Mr. Ward being asked <u>different questions</u>.  Doc. 9-9, pp. 57-91; Doc. 20-21, pp. 39-57.  In his deposition, Mr. Ward provided testimony about a specific call he took on the home phone, but that was not the only call and that was not his only testimony.

Doc. 9-9, pp. 57-91. The Bankruptcy Court Judge even noted the lack of discrepancy and informed Target's counsel that he failed to "pin him down." Doc 9-9, p. 84. Further, it is disingenuous for Target to imply that Mr. Ward had no contact with Target resulting from a call to his cell phone, when Target's own records evidence the calls and contacts (Doc. 20-4 & 20-5) and where counsel for Target recognized the calls and contacts in his own questions directed to Mr. Ward (Doc. 20-21, pp. 33-55 & Doc. 9-9, pp. 64, 69, 72, 78& 79).

The evidence as a whole, not just the portions that Target cherry picks, supported the Bankruptcy Court's finding that Mr. Ward had conversations with Target when they called his home phone <u>and</u> his cell phone. Doc. 9-9, pp. 57-91; Doc. 20-21, pp. 33-55; Doc. 20-23. Further, the evidence as a whole, not just the portions that Target cites, supports the Bankruptcy Court's finding that Mr. Ward, on every single call where he had a conversation with Target, informed Target that he was not on the account and instructed Target to stop calling him. Doc. 9-9, pp. 57-91; Doc. 20-21, pp. 33-55; Doc. 20-23.

Conversely, it is Target's position that has changed. First, Target knowingly withheld call records evidencing significant calls and contacts. Doc. 9-9, pp. 159-179. In the litigation, Target knowing that there were more calls than what was documented in its records withheld that critical call information, and instead, subsequently admitted to and revealed fewer calls than were actually made.

Presumably, Target hoped that litigating a case with fewer calls would result in a more favorable verdict. Target answered written discovery, filed motions, signed affidavits, and questioned witnesses using information in records it knew was incomplete. Target failed to consider the more than 20 calls made by its own agent (Alliance One) that the agent made in Target's name on Target's behalf at Target's request. At trial, Target was forced to admit that there were more calls than it previously disclosed and admitted to. Second, Target's witness failed to answer questions in her deposition and subsequently made numerous **substantive** changes to her deposition transcript using **13 pages** of errata sheets.[17] Doc. 20-9; Doc. 20-10. Third, Target admitted that it purged some of the records. Doc. 20-7, pp. 76 & 115; Doc. 20-4, pp. 37-40. Fourth, unlike Mr. and Mrs. Ward, none of the Target witnesses had any independent recollection of the calls and contacts. Therefore, while Target's records are somewhat helpful, they are also incomplete and Target's testimony has not only changed, but is unreliable.

The Bankruptcy Court commented negatively on this missing evidence and stated, "we have missing records … some of Target's calls weren't captured … this isn't notated, meaning someone was less than precise in noting the history of

---

[17] The Eleventh Circuit has adopted a narrow approach of Rule 30(e) prohibiting corrections on errata sheets that alter the substance of the deponent's testimony. *Amlong & Amlong, P.A.* v. *Denny's, Inc.*, 457 F.3d 1180, 1220–21 (11th Cir.2006); *Reynolds v. Int'l Business Machines Corp.*, 320 F.Supp.2d 1290, 1300–01 (M.D. Fla. 2004), aff'd, 125 Fed. Appx. 982 (11th Cir. 2004). *In re Accutane Products Liability Litigation*, 2007 WL 1099049 *1 (M.D. Fla. 2007).

what transpired during the calls themselves … we know that Target is missing calls …" Doc. 9-7, pp. 17-20.

The Court also negatively commented on Target's counsel leading his own witnesses when she stated to Target's counsel, "when you lead your own corporate witness, you're putting your testimony in her mouth. You don't usually led your own witness even on cross. And when you do that and you put testimony in her mouth, it makes me unable to adjudicate her credibility on whether those are really her answers or are you planting them." Doc. 9-9, pp. 215-216.

As such, it is reasonable for one to reach the conclusion that information was missing from Target documents, and that the witnesses (none of whom had any independent recollection of the calls) were merely saying what Target and its counsel wanted them to say. In shortest summary, Target's documentation was incomplete, and its testimony was highly suspect; neither were deserving of a high credibility determination. The Bankruptcy Court recognized this in its findings and decision.

The AT&T phone records show the Target calls to Ernest Ward's cell phone along with the result and the length.[18] Doc. 20-18, pp. 5-57. This information was analyzed and briefed in the post trial findings of fact and conclusions of law. Doc. 20-30.

---

[18] The number at issue called ends in 1034. The relevant number from which the calls initiated (from Target/Alliance One) was 1-888-274-0160.

Using all three (3) pieces of evidence: (a) Ernest Ward's testimony; (b) the incomplete Target records, and (c) the complete AT&T records, we can see:

1. When Ernest Ward spoke to Target (or its agent), he informed Target he was not on the account and to stop calling.  Doc. 20-23; Doc. 20-21, pp. 39, 40, 44, 3, 54, 56, 57, 86, 86, 92 & 93; Doc. 9-9, p. 59, ln. 7-25; p. 60, ln. 12; Doc. 20-4, pp. 56-64; Doc. 20-18, pp. 5-57; Doc. 20-30; Doc. 20-31, pp. 6-10 & Doc. 20-32, pp. 4-5.

2. Target reached Mr. Ward on his cell phone as a result of a dialer call at least three (3) times: (a) 6/7/10; (b) 7/1/10; & (c) 7/12/10.  Doc. 20-4, pp. 56-64; Doc. 20-18, pp. 5-57; Doc. 9-9, pp. 128, 179 & 223; Doc. 20-30; Doc. 20-31, pp. 7-9 & Doc. 20-32, pp. 4-5.

3. The conversation between Ernest Ward and Target on 6/7/10 lasted 2 minutes and 1 second.  Doc. 9-9, p. 179; Doc. 20-4, p. 57; Doc. 20-18, p. 8; Doc. 20-30; Doc. 20-32, p.4.  Despite the length of the call, Target's hired agent (Alliance One) who was calling in the name of Target merely documented "#WPWRONGPARTY #NHGUESTNOTHOME."  Regardless of the fact that its would not take 2 minutes to say you have the wrong person, and she isn't home, clearly documented in this entry is the fact that Mr. Ward said you have the wrong person, which is highly corroborative with Mr. Ward's testimony.  It is reasonable to conclude that the person who

documented this call left some information out, and it is reasonable to fill in the blanks using Ernest Ward's testimony-especially since he had firsthand knowledge of the calls and contacts.

4. The conversation between Ernest Ward and Target on 7/1/10 lasted 13 seconds, which does not seem like a long time, but it is long enough to say leave me alone; stop calling me; I'm not the person you are looking for. Doc. 9-9, pp. 222-223; Doc. 20-4, pp. 57, 62-63; Doc. 20-18, p. 23; Doc. 20-30.

5. The conversation between Mr. Ward and Target on 7/12/10 lasted 1 minute and 2 seconds.  Doc. 9-9, p. 128; Doc. 20-4, pp. 58, 62-63; Doc. 20-18, p. 28; Doc. 20-30.  Despite the length of the call, Target merely documented "CTTSPOUSE (THEY ARE SEPARATED SO DIDN'T DISCUSS ACCT) SD WLD HAVE HER CALL US #NA NO ANSWER."  This entry clearly documents that Mr. Ward said something that would have informed Target that it was calling the wrong number, which is highly corroborative with Mr. Ward's testimony.   It is reasonable to conclude that the person who documented this call left some information out, especially considering the length of the call.  And it is reasonable to fill in the blanks using Ernest Ward's testimony.

6. There were at least 20 more calls, and of those calls, at least three appear to have resulted in contact: (a) call lasting 43 seconds on 6/9/10; (b) call lasting 16 seconds on 6/14/10; (c) call lasting 10 seconds on 6/21/10. Doc. 9-9, p. 180; Doc. 20-18, 5-57; Doc. 20-30. Despite making the calls, neither Target nor its agent (Alliance One) documented what happened. Those three calls did not result in a voicemail and were long enough in time for the person called to say leave me alone; stop calling me; I'm not the person you are looking for. It is reasonable to fill in the blanks using Mr. Ward's testimony.

7. Mr. Ward was a former collector, and at the time of the calls, discovery, and trial, he was a law enforcement officer. Doc. 9-9, pp. 58-59, 62 & 87; Doc. 20-16, p. 23. It is reasonable to credit Mr. Ward's testimony.

Importantly, the Bankruptcy Court Judge serving as the factfinder had the job of assessing credibility of witnesses and records, weighing evidence, and found that the credibility and weight of the evidence went to the Ward's. *See* Doc 20-31 & 20-32. Since there was a sufficient basis in the record for the Bankruptcy Court's findings, this Court must accept them. The findings are not contrary to the laws of nature and not so inconsistent or improbable on their face that no reasonable factfinder could accept them. Thus, the Bankruptcy Court findings regarding the date of Mr. Ward's revocation of alleged consent, the number of subsequent calls, and damages should be affirmed.

## CONCLUSION

After considering all of the admitted documents and listening to all of the sworn testimony, the factfinder found that Appellant/Defendant/Target committed: (a) an FCCPA violation, and (b) a TCPA violation and that Target did not meet its burden to establish any applicable affirmative defenses, and in particular, express consent. Those findings of fact and conclusions should not be overturned or disturbed. In reviewing the record in light of the above, we find that the trial court, as the factfinder, had before it competent and substantial evidence upon which to base its award. Accordingly, we ask this Court to affirm the Bankruptcy Court's decision and final judgment and for such other relief as this Court deems just and proper.

Dated: January 29, 2016        Respectfully Submitted,

**LASH WILCOX & GRACE PL**
4950 W. Kennedy Blvd., Ste. 320
Tampa, Florida 33609
Phone: (813) 289-3200
Facsimile: (813) 289-3250
Counsel for Appellee

/s/ Kenneth C. Grace, Esq.
**KENNETH C. GRACE, ESQ.**
Florida Bar No. 0658464
e-mail: kgrace@lashandwilcox.com

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not believe oral argument is necessary to decide the issues raised in this appeal but is prepared to make oral argument upon request.

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this Response and Answer Brief complies with Rule 8015 of the Federal Rules of Bankruptcy Procedure.  In particular, this brief complies with the size, typeface, and volume instructions set forth in Rule 8015(a). Excepting the parts of the brief that are exempt, this brief contains 12,120 words, which is less than the 14,000 words permitted.

/s/ Kenneth C. Grace, Esq.
Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2016, I presented a true and correct copy of the  foregoing  *Appellee's Response and Answer Brief* to the Clerk of the United States District Court for the Middle District of Florida, Tampa Division, for filing and uploading to the CM/ECF system thereby providing a copy of the same to all counsel of record via email, including but not limited to Counsel for Appellant.

/s/ Kenneth C. Grace, Esq.
Attorney