UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TARGET NATIONAL BANK,

    Appellant,

v.                                               Case No: 8:15-cv-614-T-36
                                                 Bankr. No: 8:10-bk-20178-CPM
                                                 Adv. No: 8:12-ap-145-CPM

ANGELA WELCH, as Chapter 7 Trustee

    Appellee.
_____/

## OPINION AND ORDER

    This cause comes before the Court upon Appellant Target National Bank's ("Target") appeal of the Bankruptcy Court's Order finding that Appellee Angela Welch, as Chapter 7 Trustee of the estate of Ernest and Donna Ward ("Trustee"), is entitled to recover against Target for violations of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  Target filed a brief in support of its appeal (Doc. 15), to which the Trustee responded in opposition (Doc. 22), and to which Target replied in further support (Doc. 23).  On February 25, 2016, the Court held oral argument on the appeal.  *See* Doc. 24; *see also* Doc. 26 ("Tr.").  Following the oral argument, the Trustee filed a Notice of Filing.  Doc. 25.  Upon due consideration of the record, the parties' submissions, and the oral argument, and being fully advised in the premises, the Court will now AFFIRM the Bankruptcy Court's Order.

I.    **BACKGROUND**

    A.    **Events Prior to the Wards' Bankruptcy Filing**

    Donna L. Ward ("Ms. Ward") opened a Target credit card account in February 2008.  Doc. 20-24 at 2.  On her credit card application, Ms. Ward provided to Target the number of her home

landline phone, which she shared with her husband, Ernest A. Ward ("Mr. Ward"). Doc. 9-12 at 2. As part of the credit card agreement, Ms. Ward also agreed to allow Target and/or its agents to call her cellular telephone using an automatic dialing service. Doc. 9-13 at 4. However, instead of providing to Target the number of her own cellular telephone, Ms. Ward provided to Target the number of Mr. Ward's cellular telephone. *Id.* Mr. Ward was never a party to Ms. Ward's Target credit card account, never provided his phone number to Target, and never consented to be called by Target on his cellular telephone. Doc. 20-24 at 2; Doc. 9-9 at 21-22, 58-59.

In 2010, Ms. Ward's Target account became past due. Accordingly, in March 2010, Ms. Ward contacted Target and worked out a temporary, six-month payment plan with Target, under which Target agreed to a lower minimum monthly payment, a lower annual percentage rate for purchases, and no late fees. Doc. 9-15.

By June 2010, however, Ms. Ward's account was again overdue, so Target and its agent, Alliance One, began to make collection calls to discuss the account. Doc. 9-9 at 163-64. Target and Alliance One called the Wards' home landline phone as well as Mr. Ward's cellular telephone. Doc. 9-9 at 21, 23, 58. At some point, Mr. Ward informed Target that the account was in his wife's name and not his name, and also told Target to stop calling them. Doc. 9-9 at 59. Nevertheless, Target and Alliance One continued to call the Wards in an attempt to collect on Ms. Ward's account. Doc. 9-9 at 63.

B.  **Bankruptcy Court Proceedings**

In August 2010, the Wards filed a Chapter 7 petition for bankruptcy. Doc. 20-26. In February 2012, the Trustee brought an adversary proceeding against Target, alleging that Target's debt collection efforts against the Wards violated various provisions of the FCCPA and the TCPA. Doc. 20-27.

On September 25, 2013, the Bankruptcy Court announced a number of findings of fact and conclusions of law. Doc. 10. With regard to the FCCPA claim, the Bankruptcy Court noted that the specific number of calls Target made to the Wards could not be precisely determined, but credited the Wards' testimony that they had been called by Target "many times" on both their home phone and Mr. Ward's cellular telephone even after the Wards had told Target to stop calling, and found that these communications could "reasonably be expected to harass the debtor." Doc. 10 at 6-8. The Bankruptcy Court further noted that although Ms. Ward testified that she did not feel harassed by Target's calls, she believed that harassment required rude or profane language, and rude or profane language is not required to establish a violation of Fla. Stat. § 559.72(7). Doc. 10 at 7-8. The Bankruptcy Court thus concluded that Target had violated Fla. Stat. § 559.72(7). Doc. 10 at 8.[1]

With regard to the TCPA claim, the Bankruptcy Court found that Target had violated the TCPA because, despite the fact that Ms. Ward had mistakenly given Target permission to call Mr. Ward's cellular telephone number, Mr. Ward had the right to, and did, revoke consent. Doc. 10 at 9-10. Subsequently, on March 27, 2014, the Bankruptcy Court found that Mr. Ward had revoked consent on June 7, 2010, because Mr. Ward had had a two-minute long conversation with Alliance One on that date, Mr. Ward testified that he had told "everyone" of Target's people to stop calling him, and the length of the call was longer than necessary for Mr. Ward to simply say "wrong number, goodbye." Doc. 9-11 at 4. The Bankruptcy Court further found that Target had made a total of 46 calls in violation of the TCPA (constituting all of the successful connections to Mr.

---

[1] The Bankruptcy Court also rejected the Trustee's claim that Target had violated Fla. Stat. § 559.72(17), finding that the Trustee had not established by a preponderance of the evidence that any of the calls occurred between 9 pm and 8 am. Doc. 10 at 5-6.

Ward's cellular telephone after June 7), and that the twelve calls Target made to Mr. Ward's cellular telephone after July 12, 2010 were willful violations of the TCPA. Doc. 9-11 at 4-5, 8-9.

On March 2, 2015, the Bankruptcy Court entered final judgment in favor of the Trustee in the total amount of $36,000, consisting of $1,000 in statutory damages for the FCCPA violation and $35,000 in statutory damages for the TCPA violations (34 calls at $500 each, plus 12 calls at $1,500 each).

Target now appeals the Bankruptcy Court's Order.

## II. STANDARD OF REVIEW

The district court functions as an appellate court in reviewing decisions of the bankruptcy court. *See In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). Legal conclusions of the bankruptcy court are reviewed *de novo*, and findings of fact are reviewed for clear error. *See In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (quotation marks and citations omitted). The burden of showing clear error falls on the party seeking to overturn a bankruptcy court's finding. *See In re Caribbean K Line, Ltd.*, 288 B.R. 908, 911 (S.D. Fla. 2002).

## III. DISCUSSION

### A. FCCPA Claim

Florida Statutes § 559.72(7) provides that, "[i]n collecting consumer debts, no person shall . . . [w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any

member of her or his family." The mere proof of numerous calls is insufficient as a matter of law to establish a violation of Section 559.72(7) "if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation." *Story v. J. M. Fields, Inc.*, 343 So. 2d 675, 677 (Fla. 1st DCA 1977). Nevertheless, the finder of fact must decide whether such communications are "harassing in their frequency [] when they continue after . . . reasonable efforts at persuasion and negotiation have failed," because at that point, such communication "tends only to exhaust the resisting debtor's will." *Id.*

Target admits that Mr. Ward told Target on June 9, 2010 that Ms. Ward was unable or unwilling to pay her overdue credit card bill, and that, despite the June 9 conversation, it subsequently called the Wards 52 times over 55 days, up to six times in a single day. *See* Doc. 9-14 at 3 ("SPOUSEUNABLE/REFUSAL"); Doc. 15 at 29, 31-32. Target argues, however, that the Bankruptcy Court erred in finding that its debt-collection activity violated the FCCPA because, according to Target: (1) it is lawful for a creditor to contact a debtor who can't or won't pay, or who has asked that the creditor cease communications; (2) Target was simply trying to reach Ms. Ward to discuss the payment plan that she had set up, which is a permissible reason to contact a debtor; (3) Target ceased communications for 20 days after being told that Ms. Ward was unwilling or unable to pay, and thereafter was just checking in; and (4) Target called a permissible number of times after being told to cease communications

The Court disagrees. Although Target is correct that a creditor does not necessarily violate the FCCPA by contacting a debtor who can't or won't pay, or who has asked that the creditor cease communications, nor by contacting such debtor to discuss a payment plan, Target is incorrect that the frequency of its post-cease request communications was insufficient as a matter of law to

sustain a violation of Fla. Stat. § 559.72(7). Here, the number and frequency of calls made by Target after being asked to cease communications—52 calls over 55 days, or approximately one call a day, up to six times in a single day—is consistent with that found by other courts to state a claim or create a triable issue of fact. *See, e.g.*, *Story*, 343 So. 2d at 677 (holding that "[p]roof of almost daily calls amounting to more than 100 in a five month period, continuing after [the plaintiff] told [the defendant's] representative to quit calling and go to court, was sufficient to present a case for the jury on the issue of actual or statutory damages"); *Ortega v. Collectors Training Inst. of Illinois, Inc.*, Case No. 09-cv-21744, 2011 WL 241948, at *9 (S.D. Fla. Jan. 24, 2011) (holding that proof of 17 voicemails left over a four-month period was sufficient to create a question of material fact as to whether such communications could reasonably be expected to abuse or harass); *Scott v. Florida Health Sciences Ctr., Inc.*, Case No. 08-cv-1270, 2008 WL 4613083, at *4 (M.D. Fla. Oct. 16, 2008) (holding that 19 attempts over a period of eight months to collect a debt, after the plaintiff had communicated clearly to the defendant that the debt had already been settled, was sufficient to state a claim for a violation of Fla. Stat. § 559.72(7)); *compare Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 4-5 (Fla. 4th DCA 2009) (holding that seven telephone calls over a six-month period, none of which occurred after the plaintiff informed the defendant that he had a lawyer, "were as a matter of law neither frequent nor so harassing so to violate section 559.72(7), Florida Statutes."). Thus, a finder of fact was entitled to determine whether Target's communications, "in their frequency," could reasonably be expected to abuse or harass the Wards.

Target cites numerous cases in support of its position that the number of calls it made was permissible as a matter of law. Target's cases are readily distinguishable, however, because they concern violations of 15 U.S.C. § 1692d(5), a provision of the Fair Debt Collection Practices Act

("FDCPA") that requires a plaintiff to prove that the debt collector "repeatedly or continuously" caused a telephone to ring or engaged the plaintiff in telephone conversation with the "*intent to annoy, abuse, or harass*," 15 U.S.C. § 1692d(5) (emphasis added). *See, e.g.*, *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (holding that the plaintiff failed to establish a violation of Section 1692d(5) because "[t]he evidence demonstrates that [the defendant] placed each of its telephone calls with an intent to reach [the debtor] rather than an *intent to harass* Plaintiff.") (emphasis added); *Waite v. Fin. Recovery Servs., Inc.*, Case No. 09-cv-2336, 2010 WL 5209350, at *4-5 (M.D. Fla. Dec. 16, 2010) (same); *Mimbs v. J.A. Cambece Law Office, P.C.*, Case No. 12-cv-62200, Doc. 18, at 10 (S.D. Fla. July 31, 2013) (same). Not only does the FCCPA fail to contain any such requirement explicitly, such requirement cannot implicitly be found to apply to the FCCPA, because that would be less protective of the consumer. *See* Fla. Stat. § 559.552 ("In the event of any inconsistency between any provision of this part and any provision of the [FDCPA], the provision which is more protective of the consumer or debtor shall prevail.").

In sum, given the specific facts of this case, the Bankruptcy Court, serving as the fact finder was required to determine whether Target's "many" calls to the Wards after being asked to cease communications could "reasonably be expected to harass." The Bankruptcy Court's determination was not clearly erroneous. Likewise, there is evidence in the record to support the Bankruptcy Court's legal conclusions. Accordingly, the Court will affirm the Bankruptcy Court's Order as it pertains to the FCCPA claim.

**B.     TCPA Claim**

47 U.S.C. § 227(b)(1)(A)(iii) makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecord voice . . . to any

telephone number assigned to a . . . cellular telephone service . . . ." It is undisputed that Target used an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1) to call Mr. Ward's cellular telephone number. Doc. 20-1 at 8-10. It is also undisputed that, when Ms. Ward signed up for her Target credit card, she gave prior express consent to be contacted at the cellular telephone number belonging to Mr. Ward, and that the prior express consent was embodied in the written credit card agreement.

Target raises three issues on appeal: (1) whether Ms. Ward's prior express consent, which is embodied in a written contract, can be orally revoked;[2] (2) if so, whether Mr. Ward could revoke Ms. Ward's prior express consent;[3] and (3) if so, whether the Bankruptcy Court clearly erred in finding that such revocation occurred on June 7, 2010.

### 1. Whether prior express consent that is embodied in a written contract can be orally revoked

Target argues first that Ms. Ward's prior express consent could not have been revoked because it was given in a contractual term, and a contracting party cannot unilaterally modify a contractual term. Target adds that neither of the Wards believed that they could modify the terms of the credit card agreement. Target contends that the 2015 FCC order providing that "consumers may revoke consent through reasonable means" is not retroactive, and cannot be applied retroactively.

---

[2] It appears that Target conceded this issue at oral argument. *See* Tr. at 14 ("THE COURT: But you do acknowledge . . . that prior express consent in the agreement can be revoked? MR. MELENDEZ: We do . . . and it is Target's policy when somebody says, 'Stop calling,' to note that and stop calling them."). Nevertheless, because this argument was raised in Target's brief, the Court will address it out of an abundance of caution.

[3] Similarly, it appears that Target conceded this issue at oral argument. *See* Tr. at 38-39 ("[MR. MELENDEZ:] Target is also not arguing that Mr. Ward was powerless to stop all calls. He just had to tell us to stop in some way that we heard. Target's records show that its callers did not hear that, and the contract is Target's backstop . . . ."). Nevertheless, because this argument was raised in Target's brief, the Court will also address it out of an abundance of caution.

Target's position must be rejected, because it is foreclosed by binding precedent. In *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014), the Eleventh Circuit noted that "Congress intended for the TCPA to incorporate the common-law meaning of consent, including its revocation. Common-law notions of consent generally allow oral revocation." *Id.* at 1255. Further, continued the court, "allowing consent to be revoked orally is consistent with the government interest articulated in the legislative history of the Act [that] enabl[es] the recipient to contact the caller to stop future calls." *Id.* (quotation marks and citation omitted). Thus, held the court, "*in the absence of any contractual restriction to the contrary*, [any party is] free to orally revoke any consent previously given . . . to call [a cellular telephone number]." *Id.* (emphasis added); *see also Gager v. Dell Financial Services, LLC,* 727 F.3d 265, 273-74 (3d Cir.2013) (discussed with approval by the Eleventh Circuit in *Osorio*, and holding that, despite granting prior express consent in a contract, the plaintiff "retained the right to revoke her prior express consent" because "the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement," and "[t]he fact that [the plaintiff] entered into a contractual relationship with [the defendant] did not exempt [the defendant] from the TCPA's requirements.").

The Wards' subjective belief that they could not modify the terms of the credit card agreement is irrelevant to whether prior express consent to be called on a cellular telephone using an ATDS may be revoked, even when given in a contractual term. Target points to no provision in Ms. Ward's credit card agreement that precludes the oral revocation of her grant of prior express consent. Therefore, under the law of this Circuit, Ms. Ward was entitled to orally revoke her grant

9

of prior express consent, its embodiment in the written credit card agreement notwithstanding.[4] *See Osorio*, 746 F.3d at 1255.

>        2.        *Whether Mr. Ward could revoke Ms. Ward's prior express consent*

Target argues next, in a conclusory manner, that Mr. Ward could not revoke his wife's prior express consent, apparently because the Wards were each other's agents with respect to Mr. Ward's cellular telephone number. *See* Doc. 15 at 46 (stating simply that "[b]oth Ms. Ward and [Mr.] Ward evidently had common authority over the number, and Mr. Ward took messages for his wife at that number, thereby establishing himself as her agent for the purpose of reaching her at that number. Under those circumstances, he could not revoke her consent for calls to that number."). Target's argument is nonsensical. If Mr. Ward were acting as Ms. Ward's agent for the purpose of reaching her at that cellular telephone number, then it logically follows that he certainly could revoke Ms. Ward's prior express consent to be called at that number.[5]

>        3.        *Whether the Bankruptcy Court clearly erred when it found that revocation of the prior express consent occurred on June 7, 2010*

Target argues finally that the Bankruptcy Court clearly erred when it found that Mr. Ward revoked prior express consent to be called at his cellular telephone number on June 7, 2010. Target argues first that Mr. Ward never revoked prior express consent, because the evidence supports that Mr. Ward's attempted revocation occurred only on the Wards' landline and not on his cellular telephone. Target argues that, in the alternative, even if Mr. Ward had revoked prior express consent, the evidence clearly establishes that such revocation must have occurred on July 12, 2010, and not June 7, 2010 as found by the Bankruptcy Court.

---

[4] The Court therefore need not (and does not) reach the question of whether the 2015 FCC ruling may be applied retroactively.

[5] The Court therefore need not (and does not) address the Trustee's argument that Target failed to establish that the Wards were each other's agents for purposes of Mr. Ward's cellular telephone number.

10

The Court is unpersuaded by either of Target's arguments. In support of its argument that Mr. Ward never revoked prior express consent, Target notes that Mr. Ward testified at his deposition that he told Target to stop calling during a conversation on the Wards' landline, and that Mr. Ward initially testified at trial that he did not remember whether he was on the landline or his cellular telephone when he told Target to stop calling. This evidence, however, fails to establish that the Bankruptcy Court clearly erred when it found that Mr. Ward did in fact revoke prior express consent to be called on his cellular telephone. To begin with, Mr. Ward also testified at trial that he told Target to stop calling on both the Wards' landline and his cellular telephone. *See* Doc. 9-9 at 81. Further, although Mr. Ward testified at his deposition that he told Target to stop calling while he was on the landline, he was answering a question about one specific call that he took on that phone. *See* Doc. 9-9 at 82-84. Mr. Ward was not asked at his deposition whether that was the only call during which he told Target to stop calling, despite also testifying that he remembered other calls. S*ee* Doc. 9-9 at 84. And, as supported by Target's call records, some of those calls certainly were made to his cellular phone. Thus, Mr. Ward's trial testimony that he told Target to stop calling on both the landline and his cellular telephone was not impeached by his deposition testimony, and the Bankruptcy Court did not clearly err in crediting that trial testimony to find that Mr. Ward did in fact revoke prior express consent to be called on his cellular telephone.

In support of its argument that Mr. Ward revoked consent no earlier than July 12, 2010, Target notes the following: (1) Target talked to Mr. Ward on only three possible dates—June 7, July 1, and July 12; (2) Mr. Ward never testified as to the specific contents of any of the calls on these dates beyond stating that, more than once, he told the Target caller that his wife was not home and that he would give his wife a message; (3) Mr. Ward testified that, during the first call

11

in which he requested that Target stop calling, he told Target that he and Ms. Ward were separated; and (4) Mr. Ward's testimony regarding the Wards' alleged separation matches Target's record of the call on July 12, 2010. Thus, according to Target, the vast weight of the evidence strongly indicates that Mr. Ward's revocation, if it occurred at all, must have occurred on July 12.

Although the evidence referred to by Target can be interpreted to support its position, substantial evidence also undermines Target's evidence and supports the Bankruptcy Court's finding. Therefore, the Court finds that the Bankruptcy Court did not clearly err in finding that Mr. Ward told Target to stop calling on June 7. In particular, as noted by the Trustee: (1) Mr. Ward testified that he told "every one" of Target's people to stop calling, Doc. 9-9 at 59-60; (2) Mr. Ward had a two-minute long conversation with Target on June 7, but Target has no knowledge of what was said during that conversation and noted only "WRONGPARTY" and "GUESTNOTHOME," Doc. 9-9 at 179; and (3) Target appears to have talked to Mr. Ward (through Alliance One) at least three times more than reflected in Target's records (on June 9, June 14, and June 21), *see* Doc. 20-18, Doc. 20-30, but neither Target nor Alliance One documented what was said on those calls; and (4) Target admits that its phone records are incomplete, and that it purged some notes or records, *see* Doc. 20-7 at 76, 115.

Upon the totality of this evidence, it was not clearly erroneous for the Bankruptcy Court to find that Mr. Ward revoked prior express consent on June 7. Importantly, Target's position relies heavily upon its call notes, but the record evidence strongly suggests that those notes were incomplete. Aside from Target's notes, the only remaining evidence supporting Target's position is Mr. Ward's arguably inconsistent testimony regarding what, specifically, he said to Target, and when. The Bankruptcy Court was, therefore, entitled to credit Mr. Ward's testimony that he told Target's people to stop calling on every occasion he spoke to them. Accordingly, because it is

undisputed that Mr. Ward first spoke to Target on his cellular telephone on June 7, the Court will not disturb the Bankruptcy Court's finding that Mr. Ward revoked prior express consent on that date. The Bankruptcy Court's factual findings were not clearly erroneous and there is evidence in the record to support the Bankruptcy Court's conclusions of law.

**IV.     CONCLUSION**

The record evidence paints only a murky picture of what, precisely, occurred over the course of Target's debt-collection efforts against Ms. Ward. The Bankruptcy Court was thus left with the daunting task of discerning facts from the haze, an exercise that required it to consider both the paper trail as well as the credibility of the testifying witnesses. The Bankruptcy Court ably carried out this undertaking, while also correctly applying the law to those facts.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The Order of the Bankruptcy Court, entered on March 2, 2015, which found that Angela Welch, as Chapter 7 Trustee of the Estate of Ernest and Donna Ward, is entitled to recover a sum of $36,000.00 along with costs of the action plus a reasonable attorney's fee from Target National Bank for violations of the FCCPA and the TCPA, is **AFFIRMED**.

2. The Clerk is directed to close this case.

**DONE AND ORDERED** in Tampa, Florida on March 24, 2016.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any
United States Bankruptcy Judge Catherine Peek McEwen